**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CE DESIGN LTD.,** )<br>)<br>**Plaintiff,** )<br>)<br>**vs.** )<br>)<br>**CY'S CRABHOUSE NORTH, INC. and** )<br>**CY'S CRABHOUSE & SEAFOOD** )<br>**GRILL, INC.,** )<br>)<br>**Defendants.** ) | **Case No. 07 C 5456** |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY,  District Judge:

CE Design LTD. has sued Cy's Crabhouse North, Inc., and Cy's Crabhouse &

Seafood Grill, Inc. (collectively, Cy's Crabhouse), alleging violations of the Telephone

Consumer Protection Act (TCPA), 47 U.S.C. § 227(b)(1)(C).  Plaintiff has moved to

certify a class action pursuant to Federal Rule of Civil Procedure 23(b)(3).  For the

reasons stated below, the Court grants plaintiffs' motion.

**Facts**

The Court takes the following facts from plaintiff's complaint and evidence

offered by both plaintiff and defendants during the briefing of this motion, including

depositions and expert reports.

Sometime in 2005, Michael Arab, a manager at Cy's Crabhouse, received a fax

from an out-of-state company whose name he could not remember, offering to send

advertising faxes to local businesses on behalf of Cy's Crabhouse.  Arab ordered fax

1

advertisements, but he could not recall how many faxes he ordered.

In November 2005, CE Design received a fax advertisement for Cy's Crabhouse.

Business to Business Solutions (B2B), a business based in New York and run by Caroline Abraham (Abraham), worked for Macaw (also known as Maxileads), a Romanian company, to send fax advertisements in the United States.  B2B set up ten to fifty phone lines, received and processed payments, edited proposed advertisements, and maintained some records for Macaw.  One of the databases B2B maintained for Macaw was a database named "Fax Clients," in which it recorded information regarding Macaw's clients.  According to Abraham, the database records indicate that Cy's Crabhouse purchased two sets of 5,000 fax advertisements for a total of $328 on November 1, 2005.

Joel Abraham (Joel), Caroline Abraham's son, set up B2B's computer network—which included several computers including personal computers—sometime before 2005.  Occasionally, Joel backed up the data on the network hard drives.  Pursuant to a discovery request, Abraham asked Joel to retrieve any records stored on B2B's computer system containing the name Cy's within a specified date-range.  Joel searched the back up disks corresponding to that time period and found a few files with the name Cy in the title.  He decompressed the files and burned them onto another CD in readable format.

Plaintiff's expert Robert Biggerstaff, a retired engineer with experience in designing databases and computer-based fax programs, reviewed the data extracted by Joel.  Biggerstaff concluded that the disk contained files that were consistent with files found on a computer running HylaFAX—a commercial open source computer-

2

based fax broadcasting application for Linux.  He concluded that two archives labeled
Cy "demonstrate[ ] that a combined total of 7,295 error-free fax transmissions of the
Cy's Crabhouse fax were delivered in the November 1, 2005 and November 9, 2005 fax
broadcasts."  Mot. Ex. E at 4.

Defendant's expert David Canefield, who has over two decades of experience in
computer programing and telecommunications, concluded that the HylaFAX program
was prone to errors which could lead to false successful fax transmission messages.
Citing to complaints of "false positives" by HylaFAX users, Canefield stated that errors
in configuration could result in false positives.

## Discussion

The Court may certify a case as a class action if the party seeking certification
demonstrates that it has met all the requirements of Rule 23(a) and one of the
requirements of 23(b).  Under Rule 23(a), the party seeking certification must prove that
the class is so numerous that joinder of all members is impracticable; there are
questions of law or fact common to the proposed class; the class representative's
claims are typical of the claims of the class; and the representative will fairly and
adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(1)-(4).  In this
case, CE Design seeks certification under Rule 23(b)(3).  To succeed, in addition to the
preceding requirements, it must show that "questions of law or fact common to the
members of the class predominate over any questions affecting individual members,
and a class action is superior to other available methods for the fair and efficient
adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

Plaintiff bears "the burden of demonstrating that certification is appropriate."

*Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).  The

Court need not rely solely on the allegations in plaintiff's complaint in assessing whether

to certify a class but instead "should make whatever factual and legal inquiries are

required under Rule 23."  *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675-76

(7th Cir. 2001).

## A.      Admissibility of Biggerstaff's report

Defendants argue that plaintiff's motion is based only upon the opinion testimony

of Robert Biggerstaff, whose deficient analysis and extreme bias render his opinion not

credible.  As a result, defendants argue, the class certification motion lacks supporting

evidence.

Federal Rule of Evidence 702 provides that

[i]f scientific, technical or other specialized knowledge will Assis the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify in the form of an opinion, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Defendants challenge both the underlying data[1] and Biggerstaff's application of his

knowledge to the data.  Defendants have not challenged Biggerstaff's qualification as

an expert.

Defendants contend that Biggerstaff's report fails to undertake any analysis of

data provided by B2B.  Although defendants point out many things that they contend

are lacking in his report, it is incorrect to say that Biggerstaff's report reflects no

analysis.  Biggerstaff interpreted and explained the data on the disk retrieved by Joel

---

[1]Defendants' challenge to the data is discussed in the next section.

4

Abraham, based upon his own knowledge of computer-based fax programs.  He opined that some of the files were consistent with fax transmission logs created by the HylaFAX program.  He opined that the error-free entries indicating that a one page fax had been sent demonstrated that the fax attempt had been successful.  These opinions reflect the application of his expertise to the data provided.  That is enough to render the opinion sufficiently reliable and thus admissible for the purpose of the motion for class certification.

**B.      Authentication of the fax logs**

Defendants argue that the fax logs appended to Biggerstaff's report lack sufficient accuracy, authenticity, and reliability.  They contend that Joel Abraham's extraction of data from the B2B network was problematic because he did not recognize the formatting of the backup disk.  Due to these deficiencies, defendants argue, the data Joel retrieved could have included data that had nothing to do with Cy's Crabhouse.  Compounding this problem, according to defendants, Biggerstaff's opinion does not reflect any knowledge of how the data was retrieved.  Rather, Biggerstaff relied solely on the disk supplied to him by plaintiff's counsel.  Defendants assert that "there has been no authenticating witness that has provided factual specificity about the process by which the electronically stored information was created, acquired, maintained and preserved without alteration or change."  Resp. at 16.  Defendants also imply that the fax logs are inadmissible hearsay.

Under Federal Rule of Evidence 803(6), a record of acts or events is admissible upon the testimony of the custodian or other qualified witness showing that the record

was made at or near the time by a person with knowledge, if it was kept in the regular course of a regularly conducted business activity and it was the regular practice of that business activity to make such records.  Documentary evidence must be authenticated, but the proponent of such evidence need only produce "evidence sufficient to support a finding that the matter in question is what the proponent claims."  Fed. R. Evid. 901(a). In the present case, plaintiff contends that the fax logs are records of faxes made by Macaw on behalf of Cy's Crabhouse.

Plaintiff offered the deposition testimony of Caroline and Joel Abraham as foundation for admissibility of the fax logs.  Caroline testified in her deposition that B2B regularly maintained a database called "Fax Clients," which contained information regarding Macaw's customers, in the ordinary course of its business.  Joel Abraham qualifies as a custodian of the database, and thus as an authenticating witness, because he set up the computer network, created the back-up disks, and conducted the search that uncovered the records.  *United States v. Bowers*, 920 F.2d 220, 223 (4th Cir. 1990) ("So long as the sponsoring witness has full access and authority to search the [entity's] computer data, conducts the search diligently, and is available for cross-examination about his access, authority, and diligence, the concern for trustworthiness embedded in the rules of evidence is satisfied.").  Their testimony is sufficient to authenticate the records and to establish the foundation for admissibility under the business records exception to the hearsay rule.  Fed R. Evid. 803(6).

Defendants contend that Joel's lack of education and lack of computer expertise render his testimony insufficiently reliable for authentication purposes.  That is not so. *United States v. Lin*, 880 F.2d 209, 216 (9th Cir. 1989) (witness's lack of knowledge of

6

computer programming did not disqualify her as an authenticating witness).  Joel's

testimony reflects that he had sufficient expertise to set up and maintain a computer

network with several computers.  In addition, he backed up the network's data and was

able to locate specific data in response to plaintiff's subpoena.  As a result, the fact that

he did not recognize the format of the compressed data on the back-up disk does not

disqualify him as an authenticating witness.  Furthermore, as a nonparty without a

financial stake in the case, B2B's regularly kept business records do not raise any

special reliability concerns.  There is simply no reason for B2B to have fabricated or

modified the records for this litigation.

Finally, any doubts about the authenticity or reliability of the fax logs are

diminished substantially by other evidence that plaintiff has uncovered.  Specifically,

plaintiff has produced evidence independent of the fax logs that Cy's Crabhouse

ordered two fax broadcasts of 5,000 faxes each.  That evidence includes Caroline

Abraham's testimony and B2B's record of the order.  In addition, Arab admitted to

ordering faxes in 2005, although he could not remember how many he ordered and

insisted that he ordered no more than 300 faxes.  Finally, B2B received and deposited

a $328 check drawn by "Cy's Crabhouse & Seafood Grill."  Mot. Ex. C at 57-62 & Dep.

Ex. 12.  The date of the check was November 2, 2005, the day after the first fax

broadcast.  Caroline Abraham testified that it was the general practice of B2B to deposit

payment checks after the first fax broadcast was sent.  Plaintiff also produced entries

from B2B's database confirming the payment details and that Arab was the contact

person at Cy's Crabhouse.  This evidence supports the proposition that the fax logs are

accurate and reliable.  As a result, the Court finds that the fax logs are sufficiently

reliable to show that 7,295 faxes were successfully sent on behalf of Cy's Crabhouse on November 1, 2005 and November 9, 2005.

## C.    Burden of proof for class certification

The parties agree that plaintiff bears "the burden of demonstrating that certification is appropriate." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Defendants contend that plaintiff must make that showing with respect to each of the Rule 23(b)(3) requirements by a preponderance of the evidence. They urge the Court to follow *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 307 (3d Cir. 2008), in which the court held that "Rule 23 findings must be made by a preponderance of the evidence." The Seventh Circuit has not so held, but it has stated that district courts "should make whatever factual and legal inquiries are required under Rule 23." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001). Even under a preponderance standard, plaintiff has met the burden with respect to every requirement of Rule 23(b)(3).

## D.    Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all its members is impracticable. Courts may not rely on conclusory allegations as to the size of a class or the impracticability of joinder, *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989), and may require that a plaintiff prove class size through affidavits or other evidence. *Szabo*, 249 F.3d at 676. The members of the class must also be identifiable through objective criteria. *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, No. 06 C 949, 2008 WL 3889950, at *5 (N.D. Ill. Aug. 20, 2008) (citing *Oshana v. Coca-Cola Co.*,

472 F.3d 506, 513 (7th Cir. 2006).  The plaintiff need not, however, specify the exact number of persons in the class.  *Marcial*, 880 F.2d at 957.

Based upon Biggerstaff's conclusions and the other evidence discussed earlier, plaintiff has produced enough evidence of the proposed class' size to satisfy the numerosity requirement.  The joinder of potentially thousands of plaintiffs—or even hundreds of them—would be impracticable.  *See McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) ("Although there is no bright line test for numerosity, a class of forty is generally sufficient.").

Defendants contend that plaintiff's proposed class definition is too broad.  The Court agrees.  Plaintiff has not produced evidence indicating that any unauthorized faxes were sent beyond November 1, 2005 and November 9, 2005.  As a result, the class must be defined according to those dates, not the entire month of November.[2]

Next, defendants contend that the fax numbers on the logs are insufficient identifiers of the class because the numbers are not objective criteria.  That is simply not so.  The fax numbers on the logs "present enough information to enable class counsel to locate [the class members]."  *G.M. Sign, Inc.*, 2008 WL 3889950, at *3 (certifying class based on fax numbers).  The fax numbers are both precise and objective.  Identification of the individuals or businesses who owned those numbers on November 1, 2005 and November 9, 2005 will take some effort, but it is not impracticable.

---

[2]Defendants contend that the class may include persons who had consented to receive information from Cy's Crabhouse.  This speculative argument is contradicted by the evidence, including from Arab, regarding the ordering of the fax broadcasts.

There is, however, another problem with plaintiff's proposed definition: the use of the word "sent." The fax logs indicate that over 10,000 fax attempts were made, but only 7,295 were successfully transmitted. Thus, as worded by the plaintiff, the proposed class could include unsuccessful fax attempts. As stated earlier, the fax logs are sufficiently reliable to establish how many faxes were successfully sent. For purposes of identifying the class, the class should be defined in terms of those who received faxes, rather than those to whom attempts were made to send faxes. In short, the class definition should include only those persons or entities who received faxes on November 1, 2005 and November 9, 2005.

## E.     Commonality and typicality

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. "'A common nucleus of operative facts is usually enough to satisfy the commonality requirement of Rule 23(a)(2).'" *Keele v. Wexler*, 149 F.3d 589*, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). A defendant's pattern of standardized conduct generally is sufficient to constitute a common nucleus of operative facts. *Id.*

The typicality requirement focuses on "whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). The representatives' claims are "typical if [they] arise[ ] from the same event or practice or course of conduct that gives rise the claims of the other class members and [their] claims are based on the same legal theory." *Id.* Factual distinctions between the

10

representative parties' claims and the class members' claims does not destroy typicality so long as the claims share the same legal theory.  *Id.*

It is clear that there are issues of fact and law common to the class.  Here, the plaintiff has produced evidence of standardized conduct, namely the ordering of a fax broadcast to several thousand fax numbers.  Thus, whether that fax broadcast violated the TCPA is an issue common to the class.

Defendants argue that plaintiff's claims are not typical of those of the class because they have a defense of spoliation against plaintiff.  Defendants contend that plaintiff's decision to turn off a function on its fax machine which produces reports summarizing faxes received constitutes spoliation of evidence.  The evidence does not support defendants' position.  John Pezl testified in his deposition that in 2001 or 2002—well before November 2005—he changed the default setting on plaintiff's fax machine to deactivate the receive result function to avoid wasting paper.  Defendant contends that plaintiff's history of filing TCPA lawsuits shows that it knew the importance of preserving evidence of fax receipts.  Its failure to do so, defendants argue, is spoliation of the only evidence that plaintiff actually received a fax.  This argument ignores the fact that plaintiff did preserve evidence of a fax transmission:  the fax itself.  Furthermore, the class members are unlikely to have saved a receive result report of a fax advertisement received nearly four years ago.  Thus, the fact that plaintiff lacks a report of received faxes does not make its claims atypical of those of the class.

**F.    Adequacy**

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To satisfy this requirement,

the interests of the representative parties must coincide with those of the rest of the class, and class counsel must be prepared and able to prosecute the action effectively. *See Retired Police Ass'n*, 7 F.3d at 598; *Levie v. Sears, Roebuck & Co.*, 496 F. Supp. 2d 944, 950 (N.D. Ill. 2007)**.**

The Court finds no reason to doubt the adequacy of the class representatives or of class counsel.  Plaintiff has pursued this claim diligently, and there are no facts that would indicate that plaintiff's interests do not coincide with the rest of the class. Because any damage award is likely to be confined to statutory damages,[3] plaintiff's pecuniary interests in the litigation are aligned with those of the class.  As discussed above, there are no plaintiff-specific issues which would preclude a finding of liability. Finally, plaintiff's counsel's experience in TCPA class action demonstrates that counsel is adequate.

## G.   Predominance

Rule 23(b)(3) requires the Court to find "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that the class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Generally, when a class challenges a uniform policy or practice, the validity of the policy or practice tends to be the predominant issue in the ensuing litigation.  *See General Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n.15 (1982) ("Significant proof that an employer

---

[3]The TCPA provides for statutory damages in the amount of $500 per violation or actual damages, whichever is greater.   47 U.S.C. § 227(b)(3)(B).  Because the actual damages resulting from the transmission of a one-page fax are likely to be very low, it is highly likely that the entire class will be entitled only to statutory damages, if successful.

operated under a general policy of discrimination conceivably could justify a class of both applicants and employees."); *Rosario v. Lividitis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (holding that certification was appropriate when plaintiffs alleged that defendant had "an ongoing scheme to defraud and deceive prospective students").

Defendants contend that class certification is inappropriate because individual questions surrounding proof of receipt of faxes are issues that must be resolved on a case-by-case basis. Defendants cite the TCPA as supporting the proposition that "proof of receipt is necessary for any plaintiff to have standing to claim damages." Resp. at 19. The section cited by defendants provides that "A person or entity may . . . bring in an appropriate court . . . an action to recover for actual monetary loss from such a violation (of the TCPA), or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. 227(b)(3)(B). It does not specifically require proof of receipt.

In any event, even assuming that proof of receipt is required, defendants' argument does not carry the day. Defendants contend that the fax logs are insufficient proof of receipt. They cite a Circuit Court of Cook County case in which the court considered the liability of a defendant which contracted the sending of faxes to a third party. *Flexicorps v. Office Furniture Resources*, No. 2003 CH 9062 (Cook Cty. May 18, 2009). Unlike the present case, the third party in *Flexicorps* did not differentiate among faxes sent on behalf of different clients. Thus, the court concluded, it was impossible to determine based on the third party's records which fax numbers received faxes on behalf of the defendant and which received faxes on behalf of other clients. *Id.* at 9-10. That is not the case here. Macaw, through B2B, kept fax logs in connection with

13

individual clients. There is no indication—and defendants have offered no evidence suggesting—that Macaw commingled fax logs for different clients. Plaintiff has provided circumstantial proof of receipt by all of the numbers to which the fax logs indicate faxes were successfully sent on behalf of Cy's Crabhouse. That is sufficient to satisfy the preponderance of the evidence standard, assuming that is the standard that applies as defendants contend.

Defendants also contend that individual issues predominate because it is unknown whether any of the class members previously consented to receive fax advertisements from Cy's Crabhouse. Defendants' behavior, as alleged by the plaintiff, likely precludes individualized defenses of consent. When a sender of a fax who obtains the number from a source outside the recipient's public information (website, telephone directory, etc), "the sender must take reasonable steps to verify that the recipient agreed to make the number available for public distribution." 47 C.F.R. § 64.1200(a)(3)(B). It appears that defendants were not involved in the collection of the fax numbers at all but rather contracted with Macaw/Maxileads to conduct the operation. According to Arab's testimony, defendants took no steps to verify consent but rather simply placed the order for the fax broadcast. Therefore, defendants' alleged behavior—as defined in the proposed class certification—would make any recipient of a fax from the two November broadcasts a class member.

### Conclusion

For the foregoing reasons, the Court grants plaintiffs' motion for class certification [docket no. 145]. The Court certifies the following class under Rule 23(b)(3): all persons and entities who on November 1, 2005 and/or November 9, 2005

14

received a fax stating, "We Love To Serve You at Cy's Crabhouse," listing Cy's

Crabhouse, 301 N Milwaukee Ave Buffalo Grove, IL.  The Court sets the case for a

status hearing on August 10, 2009 at 9:30 a.m.  The parties are directed to meet and

confer prior to that date so they can propose to the Court a mechanism and timetable

for identifying the persons to whom notice will be sent.  They are to file a joint status

report by no later than August 7, 2009 identifying their proposals.  At the status hearing,

the Court will address that issue and will set a schedule for any remaining discovery.

MATTHEW F. KENNELLY
United States District Judge

Date: July 27, 2009

15