**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CE DESIGN, LTD., an Illinois corporation individually and as the representative of a class of similarly-situated persons,<br><br>        Plaintiff,<br><br>v.<br><br>CY'S CRABHOUSE NORTH, INC. and CY'S CRABHOUSE & SEAFOOD GRILL, INC.,<br><br>        Defendants. | Case No. 07 C 5456<br>Judge Kennelly |

**DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37(b)(2)**

NOW COME, Defendants, CY'S CRABHOUSE NORTH, INC. and CY'S CRABHOUSE & SEAFOOD GRILL, INC., by and through their attorneys, and pursuant to Federal Rule of Civil Procedure 37(b)(2), move for dismissal of this case as a sanction for discovery abuses. In support thereof, Defendants state as follows:

**I.    INTRODUCTION.**

In the last two weeks, sparked by a letter sent from Caroline Abraham of Business to Business Solutions ("B2B") to this Court, defense counsel has undertaken additional investigation into the factual milieu of this case. This inquiry has revealed that plaintiff's counsel violated this court's protective order, feigned compliance with discovery when faced with two hearings on Defendant's Motion to Compel discovery, and failed to supplement discovery, a withholding of evidence that has resulted in an incurable prejudice to defendant. Perhaps most grave: plaintiff's counsel had access to the purported hard drive of the alleged fax broadcaster's faxing computers during fact discovery, expert discovery and briefing on class

certification but never produced this requested media to defendant. It appears that counsel then used this hard drive and DVDs from B2B—produced pursuant to the protective order and a confidentiality agreement—to launch other TCPA class action suits throughout the country. In the midst of this, ████████████████████████████████████████████████████████████████████████████████████████████████████████ This fuller picture of the facts shows a year's worth of withholding material evidence and specific instances of lack of candor with the court. Dismissal of this action is appropriate because Rule 37(b)(2) provides that in such instances of willful failure to obey discovery orders, the court can order dismissal. FED. RULE CIV. PRO. 37(b)(2)(A)(v)(2007); *see also Hindmon v. National-Ben Franklin Life Ins. Corp.*, 677 F.2d 617, 620 (7th Cir. 1982)(imposition of the sanction of dismissal is appropriate in instances of a litigant's failure to cooperate in the discovery process).

## II.   FACTUAL BACKGROUND.

On March 15, 2010, this Court provided the parties with a letter sent by Caroline Abraham, the owner of B2B. (*See* Doc. # 211 at 2.) Abraham expressed concern that information her son or she had produced in this case had been used improperly by plaintiff's counsel. (*Id.*) Plaintiff's counsel had assured her "that nobody would look at anything on the backup disks or hard drive that did not pertain" to the instant lawsuits. (*Id.*) With other cases where she believes information is being used improperly, Abraham stated: "[n]obody knows if they or anybody else ever really received fax ads from the defendants." (*Id.* at 3.) In a hearing before Judge Kendall, who presides over the *GM Sign Inc. v. Finish Thompson* matter, she explained that the media B2B has produced has been used by plaintiff's firm to make "many, many new cases against these old customers of ours, based simply on the evidence that we turned over." (Mar. 22, 2010 Tr. at 4, attached hereto as **Exhibit A**.)

Here, the court ordered that "[a]ny motions directed to the subject matter involved in the letter" be filed by March 28, 2010. (*Id.* at 1.) Pursuant thereto, defendant undertook additional investigation into the background of Abraham's letter and moves, herewith, for dismissal.

### A. Proceedings In The Lawsuit.

On June 13, 2008, Defendant propounded Interrogatories and Document Requests upon Plaintiff (referred to herein as "Supplemental Discovery"). Plaintiff filed responses on or about September 16, 2008. (Pl.'s Resp. to Def.'s Combined Interrogs. and Doc. Requests attached hereto as **Exhibit B**.) Defendant had requested, amongst other discovery: all documents relating to any communications, correspondence, subpoenas, phone records, bills, letters or emails with Business to Business Solutions, MaCaw, and/or Speakeasy Inc. at any time during this case; every subpoena issued by plaintiff's firm in any TCPA lawsuit to Business to Business Solutions, MaCaw, and/or Speakeasy Inc.; and, every response by Business to Business Solutions, MaCaw, and/or Speakeasy Inc. to any subpoena issued by the plaintiff's law firm in any TCPA lawsuit. (*Id.*, Requests Nos. 2, 5-6.) In the responses, plaintiff stated it did not know Speakeasy, Inc.; it objected to the requests as overly broad, unduly burdensome and protected by attorney-client and work product privileges; and, it would provide copies of any response received to its subpoena to B2B. (*Id.*, Responses to Requests Nos. 2, 5-6.)

Believing the responses to be incomplete, defense counsel sent correspondence to plaintiff's counsel; and, subsequently, defendants brought a Motion to Compel responses. (Def.'s Motion to Compel attached hereto as **Exhibit C;** Letters to counsel attached thereto.)

Two days prior to the hearing on the Motion to Compel, plaintiff's counsel served a one-page "Notice of Subpoenaed Deposition" for the deposition of Joel Abraham, the college age son of the owner of B2B. (Dec. 16, 2008 Notice of Dep. attached hereto as **Exhibit D**.)

At the hearing on the Motion to Compel, counsel for plaintiff represented that they had produced everything they had in terms of communications with Caroline Abraham and documents from her related to this case. (Dec. 18, 2008 Tr. at 2, 6, attached hereto as **Exhibit E**.) Since defense counsel had a document from *GM Sign v. Finish Thompson* that showed otherwise, defense counsel countered this affirmation. (*Id.* at 4-5.) This Court explained that "consistent with the scope of Rule 26" counsel needed to ensure the production was complete. (*Id.* at 7.) The court went on: "I don't think…[you] have any privilege that attaches to these documents" as "[t]hese are documents that you obtained from some third party, actually a third party that's identified with the other side in the case." (*Id.*) The court continued the motion for a few weeks to allow plaintiff's counsel to review the production. (*Id.* at 8.) The court explained that plaintiff's counsel "need[ed] to do a better job of this" and should not "be drawing these artificial lines." (*Id.* at 8-9.)

Then, at a hearing on January 6, 2009, this Court again addressed the requests for discovery that were the subject of the defendant's Motion to Compel. (Jan. 6, 2009 Tr. at 7 attached hereto as **Exhibit F**.) Counsel for the plaintiff made the "representation on the record that [plaintiff's counsel had] produced all documents relating to Business to Business Solutions to counsel." (*Id.*) The court inquired: "So the motion [to compel] that I entered and continued…you say you have produced everything?" (*Id.*) To which plaintiff's counsel responded: "Yes." (*Id.*) Defense counsel explained that he had requested all correspondence, e-mails, etc. involving B2B and Abraham "regarding any matter." (*Id.* at 8.) Plaintiff's counsel had made a production of documents, maintaining it was "everything," and claimed "no privilege with respect to any of those communications." (*Id.*) Given these representations, the Court found the Motion to Compel moot. (*Id.*)

By this time, plaintiff's counsel had produced documents.  One set of documents, Bates labeled CE/SAD 2312 through 2322, served as the only documents produced by counsel in response to Defendant's Supplemental Discovery pertaining to subpoenas and communications with B2B and any of its agents and employees.  (Docs. attached hereto as **Exhibit G**.)

On January 8, 2009, the deposition of Joel Abraham proceeded.  (*See e.g.*, Joel Abraham Dep. at 15-23 attached hereto as **Exhibit H**.)  During this deposition, for the first time, defense counsel received—as it was marked as Exhibit 1 for the deposition—a subpoena purportedly sent to Joel Abraham for production of "back-up disks and hard drive that contain information relating to any fax broadcasting by Business to Business Solutions." (*Id.* at 16; *see also* Exh. 1 thereto.)  Defense counsel objected to the entire line of questioning on the disks (no other media was produced) as the subpoena was not produced in advance of the deposition.  (*Id.* at 16-17.)

After Joel Abraham's deposition, in February 2009, plaintiff's expert provided his opinions based upon the DVD and CD that Joel Abraham had provided.  Prior to the plaintiff's expert's deposition in February 2009, plaintiff's counsel produced these disks, only, to defendant.  Expert discovery took place from February 2009 to the end of May 2009; and, briefing on Plaintiff's Motion for Class Certification took place from April 27, 2009 to July 14, 2009.  On July 27, 2009, this Honorable Court granted class certification.  (Doc. # 156 at 15.)[1]

### B. Plaintiff's Counsel's Communications With And Exchanges Of Information With Caroline Abraham d/b/a Business To Business.

On August 4, 2008, less than two months *after* defendant's propounding of Supplemental Discovery, Caroline Abraham sent a letter to plaintiff's counsel in which she explained that she

---

[1] Defendants had contended that the data produced by B2B was not reliable because, in part, the information had not been authenticated.  (*See id.* at 5-6.)  In certifying the class, this Court concluded—with regard to this argument—that "as a nonparty without a financial stake in the case, B2B's regularly kept business records do not raise any special reliability concerns" and that "[t]here is simply no reason for B2B to have fabricated or modified the records for this litigation."  (*Id.* at 7.)  The court's order directed the parties to propose a mechanism and timetable for identifying the persons to whom notice would be sent; a status was set for August 17, 2009. (*See* Doc. # 156 at 15; see also Doc. # 159.)

was able to provide "some, but not all, of the information that you requested." (Aug. 4, 2008 Letter attached hereto as **Exhibit I**.) She appended an "Exhibit A of both actions," which itemized documents she could produce and documents she claimed to no longer retain. (*Id.*) On that same date, plaintiff's counsel sent a letter to Abraham thanking her for the documents and advising that he would file no action against her. (Aug. 4, 2008 Letter attached hereto as **Exhibit J**.) Neither of these communications was ever produced to defendant.

Subsequently, from August 12, 2008 through September 13, 2008, plaintiff's counsel sent email correspondence to Abraham—*at Speakeasy.net*—to arrange for the taking of her deposition; he also corresponded regarding other cases involving B2B and her locating of "transmission reports." (*See* Exh. G.) Plaintiff's counsel did produce this correspondence.

But then, from September 15, 2008, to January 6, 2009 (the date of the court's hearing on Defendant's Motion to Compel), plaintiff's counsel and/or its local counsel in New York continued to communicate with Caroline Abraham. (*See* Sept. 2008 - Jan. 6, 2009 E-mails attached hereto as **Exhibit K**.) In an October 6, 2008, email, plaintiff asked that Abraham provide: all telephone and billing records for B2B; the name, address and telephone number for Martha Escobar's printing business; the address for "Rutland location" where the "computers were stored" and the "Wilshire Blvd. location where the computers were stored;" and, the last known contact information for Ron Hillard, Kevin Wilson, and Christina Page. (*See id.*) In late October 2008, plaintiff's counsel explained that they would be moving for a rule to show cause given her lack of production. (*Id.*) Then, on November 25, 2008, counsel sent to Abraham authorizations for release of telephone records; while, a separate email enclosed a copy of the proposed order for the New York court regarding production of documents listed in the October 6, 2008 email. (*Id.*) On December 8, 2008, plaintiff's local counsel in New York wrote to

Abraham to thank her for supplying "the information" and asking her if counsel could meet with her to discuss the materials. (Dec. 8, 2008 Email attached hereto with Exh. K.) These specific pieces of correspondence, on October 6, 2008, November 25, 2008 and December 8, 2008, for example, were never produced to defense counsel as requested.

By the time of the court's hearing on the Motion to Compel, on January 6, 2009, plaintiff's counsel and/or its local counsel had emailed and corresponded with Abraham on approximately 36 separate occasions; yet, in discovery, plaintiff's counsel had produced only 14 pieces of correspondence.

Moreover, counsel had a continuing obligation to supplement these discovery responses. They corresponded with B2B approximately 24 more times after January 6, 2009, but none of this requested documentation was ever produced.

### C. Protective Order And Use Of Documents/Media By Counsel.

On December 16, 2008, Ryan Kelly emailed Caroline Abraham. (*See* Dec. 16, 2008 Email attached hereto as **Exhibit L**.) He attached a "protective order that will be entered that will prevent [plaintiff's counsel] from disclosing any of the back-up disks or hard drive to any third-party." (*Id.*) This Protective Order had the same operative language as the Protective Order entered by this court in this matter, including:

> 6. Confidential Information shall not be used for *any* purpose other than the defense or prosecution of this action in accordance with the provisions of this Order and shall not be discussed or disclosed to any person except as specifically authorized by this Order. All documents, information, deposition testimony or other material subject to this Order shall not be used, directly or indirectly, by any party for any business, commercial or competitive purpose whatsoever.
>
> 11. Disclosure of any Confidential Information to persons described [in the Order] shall be solely for evaluation, testing, testimony, preparation for trial or other services related to this litigation.

(*See id.*; *see also* Doc. # 81.)

In this case, on June 23, 2009, plaintiff's counsel sent an email to defense counsel asking him to "treat the DVD produced by Joel Abraham as confidential pursuant to the protective order in this case." (June 23, 2009 Email attached hereto as **Exhibit M**.)

Apparently, in January 2009, B2B produced a copy of its hard drive to plaintiff's counsel. (*See* Sept. 11, 2009 Email containing proposed Declaration of Caroline Abraham, attached hereto as **Exhibit N**.) Defense counsel never received notice or a copy of the hard drive in this matter. This production was pursuant to the subpoena in this case and the agreement of confidentiality; it occurred before expert discovery and briefing on class certification. (*See* Exh. P; *see also* Exh. 1 to Abraham Dep.)

Within two months of plaintiff's counsel's request for confidentiality over the DVD produced in this case and six months after B2B had produced its hard drive to plaintiff's counsel, only, Eric Rubin, counsel for the Abrahams, sent correspondence to Brian Wanca. (Aug. 12, 2009 Letter attached hereto as **Exhibit O**.) ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████ ^2   The communications and exchanges of information apparently culminated in Rubin's letter.

This issue of confidential data being used for other cases and in other cases is unmistakable. In a TCPA matter pending in Washington, this same plaintiff's counsel produced the confidential DVD from this case to Robert Biggerstaff for his opinions as to the faxing by B2B purportedly on that defendant's behalf. (*See* Expert Report of Robert Biggerstaff attached to Pl.'s Mem. of Law in Support of its Motion for Class Certification attached hereto as **Exhibit P**.) The production was made to persons not allowed by this court's protective order and in a case where no protective order has been entered. (*See id.*, Mem. at 4.) Biggerstaff explains that he reviewed a "DVD-ROM labeled 'Faxing 060430'"—the very same DVD from this case—to produce his report and this information was used in support of the public pleadings in that matter. (*Compare* Exh. P at 2 to Biggerstaff Report, without exhibits, attached hereto as **Exhibit Q**.) This, alone, was in violation of court's protective order that forbids dissemination to persons outside of this litigation. In addition, defendants' expert, David Canfield, received the B2B hard drive in another case in fall of 2009. (David Canfield Aff., ¶ 2, attached hereto as **Exhibit R**.) Pursuant to defense counsel's request in this case, in the last two weeks, Canfield has found the Cy's Crabhouse files on the hard drive. (*Id.*, ¶ 3.)

### III.   ARGUMENT.

If a party fails to obey an order to provide discovery, the court where the action is pending may issue further orders, including dismissing the action. FED. RULE CIV. PRO. 37(b)(2)(A)(v)(2007). Rule 37 authorizes the imposition of sanctions for a litigant's failure to cooperate in the discovery process. *Hindmon*, 677 F.2d at 620. A court may impose the sanction

---

[2] Defense counsel is sending a subpoena for production of documents and deposition of Eric Rubin in *Creative Montessori Learning Center v. Ashford Gear* regarding these communications.

of dismissal when a party's recalcitrance is due to willfulness or bad faith. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S. Ct. 2778 (1976). Here, the relief requested by defendant is wholly appropriate for at least three reasons, any one of which is a sufficient basis: 1) plaintiff's counsel has violated the court's protective order, a breach of court order that not only substantively impacts the rights of this defendant but which has allowed plaintiff's counsel to instigate numerous other TCPA class actions based upon confidential information; 2) plaintiff's counsel's violated the court's directive mandating full compliance with defendant's Supplemental Discovery; and, 3) plaintiff's failure to supplement its disclosures to provide documents and information from B2B during the course of this lawsuit materially affected the course of this litigation. Therefore, the relief sought is appropriate.

    **A.**    **The Federal Courts Have Found Appropriate Dismissal Of Cases, Pursuant To Rule 37(b)(2), In Matters Involving Less Egregious Discovery Abuses.**

In *National Hockey League*, the district court had dismissed an antitrust action for failure to answer written interrogatories in a timely fashion, as ordered by the court. 427 U.S. at 639. For seventeen months, crucial discovery requests remained substantially unanswered, even though there had been extensions allowed for the discovery and promises by plaintiffs of compliance. *Id.* at 640. The district court had concluded that the conduct of the plaintiffs demonstrated a "callous disregard of responsibilities counsel owe to the Court and to their opponents." *Id.* The Supreme Court upheld the dismissal. It explained:

> [T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. If the decision of the Court of Appeals [reversing the court's dismissal] remained undisturbed in this case, it might well be that *these* respondents would faithfully comply with all future discovery orders…[b]ut other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts.

*Id*. at 643 (emphasis in original.)

The Seventh Circuit has upheld the sanction of dismissal, pursuant to Rule 37, in cases involving comparably minor discovery infractions. "Rule 37…authorizes the imposition of sanctions for a litigant's failure to cooperate in the discovery process." *Hindmon*, 677 F.2d at 620. In *Hindmon*, the plaintiff's "lack of good faith and willful failure to cooperate in the discovery process" served as sufficient grounds for dismissal. *Id*. There, the plaintiff had failed to appear for his deposition, failed to answer, properly, the defendant's interrogatories, and failed to respond to defendant's requests for production within the time limit set by the court. *Id.* at 620-21. The Seventh Circuit upheld this dismissal as the "Plaintiff's course of conduct in this case clearly demonstrates a willful failure to comply with court-ordered discovery." *Id.*; *see also Negrete v. National Railroad Passenger Corp.*, 547 F.3d 721, 722 (7th Cir. 2008)(Plaintiff "intentionally flouted discovery deadlines, hidden and tampered with evidence and lied in his deposition.")

Moreover, "[a]ttorneys' actions are imputed to their clients, even when those actions cause substantial harm." *Wade v. Soo Line R.R. Corp*, 500 F.3d 559, 564 (7th Cir. 2007.) "A litigant bears the risk of errors made by his chosen agent." *Id.* (citations omitted.)

### B. Plaintiff Violated The Court's Protective Order In Such A Manner As To Substantially Impact Not Only The Integral Issues Of This Case But To Have Widespread Significance On Other Litigation.

Discovery abuses more severe than *National Hockey League, Hindman* and *Negrete* occurred here, and this legal precedent demonstrates why dismissal is proper.

Most critically, plaintiff's counsel has violated the court's protective order in numerous and momentous ways. The Court's order governs "handling of all confidential documents and information produced in this action by any party or non-party person or entity." (Doc. # 81 at 1.)

Any party or third part can designate non-public material as "confidential" and this "Confidential Information shall not be used for *any* purpose other than the defense or prosecution of this action…and shall not be discussed or disclosed to any person except as specifically authorized by this Order." (*Id.* at 2)(emphasis in original.)  Plaintiff's counsel and Abraham had an accord regarding B2B's production of its disks and hard drive: that it would be treated as confidential and that provisions of a protective order would prevent plaintiff's counsel from disclosing any of the back-up disks or hard drive to any third-party. (*See* Exh. L.)  Subsequently, plaintiff, without prior notice to defense counsel, subpoenaed B2B's "back-up disks and hard drive that contain information relating to any fax broadcasting by Business to Business Solutions." (*See* Exh. 1 to Exh. H.)  Thereafter, plaintiff's counsel invoked the provisions of this Court's protective order for production of B2B's DVD. (*See* Exh. M.)  Unbeknownst to defendants, B2B also produced its hard drive and another DVD regarding faxing information in January 2009 pursuant to the confidentiality agreement between B2B and plaintiff's counsel, a protection afforded by this Court's protective order. (*See* Exh. N.)

It appears that plaintiff's counsel has violated the Court's protective order and confidentiality agreement many times over by not only improperly disseminating the confidential information from this case to third parties but by also using confidential information to instigate lawsuits throughout the country.  In at least two instances, plaintiff's counsel has produced information specific to this lawsuit, and protected by the Court's order, without requiring the protections afforded by the order.  Also, it is possible that the confidential hard drive and other DVDs generated by B2B have been utilized to initiate other class action lawsuits.  Abraham, herself, has questioned as much, stating that she believes her company's media has been used by plaintiff's firm to file many new cases against B2B's old customers. (*See* Exh. A.)

In at least one other case, the timing of production of the DVDs and hard drive by B2B—media meant to be kept confidential and used for this case or *Finish Thompson*, only—is notable as it preceded plaintiff's counsel sending "marketing letters" to unknown persons and entities, who were part of a "class." In January 2009, B2B produced to plaintiff's counsel a DVD purportedly containing information for another of its clients, Ashford Gear. (*See* Exh. N.) That DVD was then received by Robert Biggerstaff in February 2009. (*See* Exh. 1 to Expert Report of Robert Biggerstaff in *Creative Montessori Learning Center v. Ashford Gear*, attached hereto with Exh. 1 as **Exhibit S**.) Two months after the plaintiff's counsel received this DVD, a production made when this court's protective order governed and pursuant to the confidentiality agreement, he sent letters to persons and entities, one of which was Creative Montessori, an entity whose contact information was on an Excel spreadsheet on that DVD. (*See e.g.*, Mar. 19, 2009 Letter, attached hereto as **Exhibit T**.) Such violations of this court's protective order and the confidentiality agreement alone substantiate the relief requested by defendants.

### C. Plaintiff's Failure To Comply With The Discovery Orders Regarding The Supplemental Discovery Has Irreparably Hampered The Defense.

Moreover, plaintiff did not comply with this Court's orders regarding Defendant's Motion to Compel.[3] Twice plaintiff's counsel misstated the completeness of its discovery production and then withheld discovery information that materially affected the defense of this case. Plaintiff produced 14 pieces of correspondence and represented to the court that this was a complete production. Defense counsel recently found much to the contrary as correspondence had been exchanged between B2B and plaintiff's counsel no less than 36 times by the Court's

---

[3] The court did not enter a written order regarding Defendant's Motion to Compel but only because the court asked the plaintiff's counsel to verify that he had "produced everything" such that the motion was "moot." (Jan. 6, 2009 Tr. at 7.) This finding by the court came only after two hearings on Defendant's Motion to Compel, where the court directed the plaintiff's to produce responsive documents and information and/or produce a privilege log. (Dec. 18, 2008 Tr. at 4-5, 8-9.) This is sufficient. "[A] formal, written order to comply with discovery requests is not required under Rule 37(b); an oral directive from the district court provides a sufficient basis for Rule 37(b)(2) sanctions." *Halas v. Consumer Servs.*, 16 F.3d 161, 164 (7th Cir. 1994).

January 2009 hearing.

In other words, at two hearings on Defendant's Motion to Compel, counsel for plaintiff affirmed its full production when that was not in fact the case. (*See* Dec. 18, 2008 Tr. at 2, 6 and Jan. 6, 2009 Tr. at 7.) Instead, it appears that plaintiff's counsel withheld documents that could have materially benefited defendants. The statements in open court appear to be an intentional "flout[ing]" of the court's discovery directives because in the months leading up the hearings on the Motion to Compel the plaintiff's counsel had sent B2B lengthy requests for documents and authorizations for production of documents. This correspondence was never produced. (*See e.g.*, Exh. K.) Perhaps most indicative of this disregard for the court's orders and directives: *on the very day* of the January 6, 2009 hearing on the Motion to Compel, in an email to Abraham, plaintiff's counsel boasted its successful opposition to the filing of a third-party complaint against Abraham, while the day before the hearing, counsel had requested "all the backup discs and the hard drive" for B2B. (*See id.*) These were not produced. Then, only at Joel Abraham's deposition—two days after the hearing where counsel had confirmed compliance with the court's orders on discovery—did defense counsel first get a copy of the December 30, 2008 subpoena for production of B2B's "back-up disks and hard drive that contain information relating to any fax broadcasting by Business to Business Solutions." (*See* Exh. H.)

Finally, beyond this considerable withholding of documents prior to and at the time of the hearings on the Motion to Compel, plaintiff failed to supplement its responses. By doing so, plaintiff's counsel prohibited defendant's access to this continued correspondence and, perhaps more importantly, to the very computer hard drive of B2B. This has resulted in an irreparable prejudice to defendants. If produced as they should have been, these materials could have drastically impacted the legal and factual arguments of the case. The regular communications

and correspondence between plaintiff's counsel and Abraham—exchanges of information that, at times, occurred on a daily basis—is significant in and of itself. The withholding of the information about this constant contact left this Honorable Court to believe that B2B was "a nonparty without a financial stake in the case" who had "no reason…to have fabricated or modified the records for this litigation." (Doc. # 156 at 7.) Defendants were also unaware of how this nonparty might have had a financial stake in the litigation—█████████████ ██████████████ and how it might have gauged its loyalties based upon the bombardment of subpoenas and the Motion for Rule to Show Cause by plaintiff. More importantly, the failure to produce the hard drive deprived defendants of the opportunity to have their expert review the additional computer data plaintiff's counsel was siphoning from B2B. No other conclusion can be construed than plaintiff's counsel deliberately concealed documents that either favored its adversary or that would have provided defendant with the full picture of the evidentiary documentation in the case. *Wade*, 500 F.3d at 564.

WHEREFORE Defendants, CY'S CRABHOUSE NORTH, INC. and CY'S CRABHOUSE & SEAFOOD GRILL, INC., respectfully request that this Honorable Court dismiss this case with prejudice, pursuant to Federal Rule of Civil Procedure 37(b)(2), and grant such other relief as this court deems just and appropriate.

                       Respectfully submitted,

              By:   /s/ Molly A. Arranz
                   Attorneys for Defendants

Eric L. Samore, ARDC # 6181345
Molly A. Arranz, ARDC # 6281122
SmithAmundsen LLC
150 N. Michigan Avenue, Suite 3300
Chicago, Illinois 60601
(312) 894-3200