**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CE DESIGN LTD.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 07 C 5456** |
| | ) | |
| **CY'S CRABHOUSE NORTH, INC. and CY'S CRABHOUSE & SEAFOOD GRILL, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

CE Design LTD. (CE Design) has sued Cy's Crabhouse North, Inc., and Cy's Crabhouse & Seafood Grill, Inc. (collectively, Cy's Crabhouse), alleging violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b)(1)(C). Defendant has moved to dismiss pursuant to Federal Rule of Civil Procedure 37(b)(2)(A). For the reasons stated below, the Court denies defendant's motion. Also, Caroline Abraham, a non-party to this suit, has filed a letter with the Court regarding discovery in this case. For the reasons stated below, the Court treats this letter as a motion for protective order, and grants it in part and denies it in part.

### Background

The Court takes the following facts from plaintiff's complaint and from the parties'

submissions on the motion to dismiss and the motion for protective order.

Business to Business Solutions (B2B), a business based in New York and run by Caroline Abraham (Abraham), worked for Macaw (also known as Maxileads), a Romanian company, to send fax advertisements in the United States. Abraham was B2B's only employee. B2B set up ten to fifty phone lines, received and processed payments, edited proposed advertisements, and maintained some records for Macaw. One of the databases B2B maintained for Macaw was a database named "Fax Clients," in which it recorded information regarding Macaw's clients. According to Abraham, the database records indicate that Cy's Crabhouse purchased two sets of 5,000 fax advertisements for a total of $328 on November 1, 2005. In November 2005, CE Design received an unsolicited fax advertisement for Cy's Crabhouse.

**A. Discovery History**

The motions at issue in this order involve disputes about CE Design's compliance with the discovery process and with a protective order issued earlier in this case.

In June 2008, Cy's Crabhouse sent CE Design interrogatories and document requests (the "supplemental discovery" requests). One of the interrogatories asked CE Design to "[i]dentify each and every communication between any agent and/or lawyer for Plaintiff and . . . [B2B]." Another interrogatory asked CE Design to "[i]dentify by name, jurisdiction and court number, each and every TCPA lawsuit in which the plaintiff's law firm issued a subpoena to . . . [B2B]." The requests for production included requests to "[p]roduce all documents relating to any communications, subpoenas, phone records, bills, letters, or e-mails with . . . [B2B]" and to "[p]roduce all

documents relating to any invoices issued at any time in 2005 by or on behalf of . . . [B2B]." Cy's Crabhouse also requested copies of any subpoenas served on B2B by plaintiff's counsel in any other TCPA lawsuit and any B2B responses to such subpoenas.

On July 2, 2008, the Court entered an agreed protective order in this case. It states:

> [A]ny party or third party that submits to the jurisdiction of this Court for adjudication of production and designation disputes who is required to produce documents or disclose information in discovery in this case (the "Producing Person") may designate as "confidential" any non-public material that the producing person believes, in good faith, contains information related to a grade secret, customer lists, non-public pricing information, personal consumer information, including social security numbers or consumer credit report, confidential research or any other information subject to a legally protected right to privacy ("Confidential Information").

Docket no. 81. To designate material confidential, the protective order required the producing person to mark or stamp it "confidential" (in the case of documents) or inform counsel for the parties in writing that it is confidential (for any material not reduced to documentary form).

In August 2008, CE Design responded to the supplemental discovery requests. It raised various objections, including that the requests were overly broad and burdensome and that the information defendants sought was privileged.

CE Design's counsel also represents the plaintiff classes in several other TCPA cases involving B2B, and B2B has been subpoenaed in several of those cases. One such case, *G.M. Sign, Inc. v. Finish Thompson*, Case No. 07 C 5953, is currently pending before Judge Virginia Kendall of this district. In connection with that case, a judge in the United States District Court for the Eastern District of New York (where

Abraham lives) issued a rule to show cause directing Abraham to produce B2B telephone records and the fax numbers of parties that received faxes from Finish Thompson.

On September 16, 2008, Abraham was deposed in this case. She brought documents with her to the deposition, including her responses to subpoenas and discovery requests in other TCPA cases, but on the advice of plaintiff's counsel she did not show these to counsel for Cy's Crabhouse.[1]

On October 7, 2008, Cy's Crabhouse filed a motion to compel CE Design to comply with its supplemental discovery requests. Docket no. 97. The Court held a hearing on the motion to compel on December 18, 2008. During the hearing, Cy's Crabhouse argued that plaintiff's counsel should be compelled to turn over all materials Abraham had given to him pursuant to subpoenas in other cases. It argued that the materials included information that is relevant to this case, such as the methods B2B used to identify and group fax numbers of advertisement recipients.

CE Design's counsel responded that it had already turned all materials that specifically mentioned Cy's Crabhouse and argued that Cy's Crabhouse was not entitled to see the other materials because they were privileged, or attorney work product, or irrelevant. Cy's Crabhouse replied that relevant information was not limited to that which mentioned Cy's Crabhouse by name, but included information about the structure of B2B's business, its methods for identifying recipients of advertisements,

---

[1] Abraham was not represented by counsel at her deposition, and asserts that she is not currently represented by any counsel (including plaintiff's counsel). She is not a plaintiff in this lawsuit.

and the like.

The Court admonished CE Design's attorney that because he did not represent Abraham, his claims of privilege were likely unavailing. The Court instructed counsel for CE Design to go through the Abraham materials again and produce any materials that were responsive to the interrogatories and document requests submitted by Cy's Crabhouse, not just those that mentioned Cy's Crabhouse by name. Tr. of Hr'g on Mot. to Compel, Docket no. 215, Ex. E. At a hearing on January 22, 2009, counsel for CE Design told the Court that he had reviewed all the documents and had given Cy's Crabhouse everything that was relevant to the supplemental discovery requests. Based on this representation, the Court terminated the motion to compel as moot. Docket no. 115.

**B. Communications between plaintiff's counsel and Abraham**

The supplemental discovery requests that were the subject of Cy's Crabhouse's motion to compel focused on the relationship between Abraham and plaintiff's counsel (not CE Design). Plaintiff's counsel represents plaintiffs in several TCPA lawsuits involving B2B and has communicated with Abraham by e-mail about this and other cases. These e-mail communications included requests for production of B2B business records as well as discussions about scheduling depositions of Abraham and her son Joel Abraham (Joel).[2] The e-mails did not always distinguish among the cases or say which case was being referred to in a particular message.

---

[2] Abraham was the only employee of B2B, but her son Joel set up B2B's computer network. It was Joel who compiled the data that Abraham gave plaintiff's counsel regarding B2B's customers and activities.

In response to repeated requests for documents from plaintiff's counsel, Abraham sent a letter to Ryan Kelly, one of plaintiff's attorneys, on July 30, 2008. In the letter, Abraham told Kelly that she was able to provide "some of the information that [he] requested," but not all of it. She explained that she did not have access to the fax numbers to which the advertisements were sent, because those numbers were controlled by Macaw, the now-defunct Romanian company that actually sent the advertisements. Abraham also explained that she had a hard drive crash a few years before and that some of the information or data counsel sought may have been on the hard drive that crashed. Docket no. 237, Ex. A. Abraham closed her letter by asking for compensation of $750 for the time she spent looking for and collecting the information Kelly had requested.

On August 4, 2008, Abraham sent Kelly another letter, again stating that she did not have all of the information he had requested. She said that if she was named as a party in any action, she would be forced to default, and she requested a payment of $1,250 for her assistance in compiling the documents plaintiff's counsel had requested. Docket no. 215, Ex. I.

Between August and December 2008, plaintiff's counsel exchanged several more e-mails with Abraham that apparently discussed this case. Plaintiff's counsel asked Abraham to provide them with B2B's telephone and billing records, sent her an authorization form for release of her telephone records, and asked if they could meet to discuss the content of materials she had already turned over. Cy's Crabhouse asserts that CE Design failed to disclose these e-mail communications, despite its representation at the January 22 hearing that it had turned over all information about

contact between plaintiff's counsel and B2B.

Sometime in late 2009, Abraham produced documents listing fax numbers pursuant to the show cause order in the *Finish Thompson* case. After she produced the documents, plaintiff's counsel in the present case requested that she also provide the backup discs Joel had used to compile the information and the crashed hard drive that had stored information about all B2B fax customers and recipients.

CE Design subpoenaed Joel for a deposition in this case, and the deposition was scheduled for January 8, 2009. At the time the deposition was scheduled, Abraham had not yet given plaintiff's counsel the backup disks and hard drive that they had requested. Via e-mail, plaintiff's counsel suggested that her son could bring the materials to his deposition, and Abraham agreed. The subpoena issued for Joel's deposition in this case therefore instructed him to bring with him "[t]he back-up disks and hard drive that contain information relating to any fax broadcasting by [B2B]. Docket no. 215, Ex. H.[3]

Cy's Crabhouse knew a subpoena had issued for Joel's deposition, but it had not seen the actual subpoena, and it was therefore unaware of the existence of the backup disks and hard drive until plaintiff's counsel asked Joel about them at the deposition. Joel apparently brought one backup disk (burned onto a DVD) to his deposition, but not the hard drive. Cy's Crabhouse received a copy of the DVD but states that CE Design never gave it a copy of the hard drive that Joel apparently produced to plaintiff's

[3] On the same day as his deposition in this case, Joel was deposed in the *Finish Thompson* case, and that subpoena included an identical instruction to bring backup disks and a hard drive. Letter of Caroline Abraham to Court, Docket No. 211.

counsel sometime in February 2009.

In August 2009, Brian Wanca, one of the attorneys for CE Design, sent a check for $5,000 to Eric Rubin, an attorney who briefly represented the Abrahams.[4] Rubin returned the check to Wanca with a letter explaining that he believed the check to be an inappropriate attempt to pay Abraham for her participation in the discovery process.

**C. Abraham's letter to the Court**

On February 10, 2010, Abraham sent a letter to the Court. In the letter, she stated that she believed that plaintiff's counsel was improperly using information stored on the backup disks and hard drive to initiate TCPA lawsuits against other B2B customers.

According to Abraham, she originally gave plaintiff's counsel printed lists of fax numbers in an excel spreadsheet because she was ordered to do so by the New York court on the rule to show cause order in *Finish Thompson*. She told plaintiff's counsel that the list had been generated using backup disks and also mentioned to counsel that an old computer hard drive containing additional information had crashed. Plaintiff's counsel then asked her to provide those disks and that hard drive. Abraham did not produce the electronic media right away. According to Abraham, she produced them only after she had been assured by Ryan Kelly, one of the plaintiff's attorneys, that they would only be used in four cases that had already been filed (including this one and *Finish Thompson*), and that pursuant to a protective order, he would be prevented from

[4] Caroline Abraham maintains that she and her son are not currently represented by counsel, but an attorney did accompany Joel to his deposition.

disclosing the contents of the back-up disks or hard drive to any third party.[5]

The backup disks and hard drive that Abraham gave to plaintiff's counsel contained fax numbers and lists for many other business for which B2B sent fax ads, not just those at issue in the four cases Abraham had discussed with Kelly. Abraham's letter asserts that she believes plaintiff's counsel has improperly used the information obtained from the backup disks and hard drive to bring separate TCPA lawsuits against several former B2B customers, without Abraham's permission and against her wishes. She also alleges that plaintiff's counsel has been selling the information it obtained on the disks and drive to other law firms for use in filing additional TCPA lawsuits. She closes her letter by asking the Court to prevent the further use of this information in the lawsuits that have already been filed or in any future lawsuits.

CE Design moved to strike Abraham's letter, which it classifies as an "*ex post* request for a protective order." The Court denied the motion to strike and instructed the parties to respond to the letter. In its response, CE Design argues that the disks and hard drive that Abraham produced are not subject to the protective order in this case because Abraham, the producing party, never informed counsel in writing that she intended the materials to be confidential. It argues that the Court therefore should deny Abraham's request that plaintiff's counsel be prohibited from using the information contained on the disks and drive in other cases.

**D. Defendant's motion to dismiss**

Abraham's letter also prompted Cy's Crabhouse to conduct a review of the

---

[5] The protective order Kelly attached to his e-mail was from the *Finish Thompson* case, not this case, but the orders are identical in all relevant respects.

discovery process. That review, Cy's Crabhouse argues, reveals that "plaintiff's counsel violated this court's protective order, feigned compliance with discovery when faced with two hearings on Defendant's Motion to Compel discovery, and failed to supplement discovery, a withholding of evidence that has resulted in an incurable prejudice to defendant." Docket no. 215 at 1. Cy's has moved to dismiss under Federal Rule of Civil Procedure 37(b)(2)(A).

## Discussion

### A. Defendant's motion to dismiss

Cy's Crabhouse argues that this case should be dismissed pursuant to Federal Rule of Civil Procedure 37(b)(2)(A) for three reasons. First, it alleges that plaintiff's counsel violated the protective order issued by this Court when it shared information from the backup disks and hard drive with third parties and used it to initiate other TCPA cases. Second, it contends that CE Design violated discovery orders in this case when it falsely represented to the court at the January 22 hearing that it had complied with all supplemental discovery requests. Third, it argues that CE Design failed to meet its obligation to supplement discovery by failing to disclose its ongoing communications with Abraham.

Cy's Crabhouse argues dismissal is appropriate under Rule 37(b)(2)(A), which gives a court discretion to dismiss a case (among other sanctions) if a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. Proc. 37(b)(2)(A). In determining whether dismissal is an appropriate sanction under Rule 37, a court must consider "the circumstances of the failure . . . because the judge must be guided by the

norm of proportionality that guides all judicial applications of sanctions." *Newman v. Metro. Pier & Exposition Auth.*, 962 F.2d 589, 591 (7th Cir. 1992) (citing *Mraovic v. Elgin, Joliet, & Eastern Ry.*, 897 F.2d 268, 271 (7th Cir. 1990). "If the failure is inadvertent, isolated, no worse than careless, and not a cause of serious inconvenience either to the adverse party or to the judge or any third parties, dismissal . . . would be an excessively severe sanction." *Id*.

*1. Violation of protective order*

Cy's Crabhouse contends that plaintiff's counsel violated the protective order entered by the Court. It argues that the fax lists, backup disks and the hard drive provided by Abraham are confidential materials under the protective order. It notes that Kelly, an attorney for CE Design, attached a copy of a protective order to his request for documents and told Abraham that it would prevent him from sharing the information with a third party. Cy's Crabhouse alleges that CE Design has "improperly disseminat[ed] the confidential information from this case to third parties," although it does not specify to whom that information has been disclosed. Docket no. 215 at 12. Cy's Crabhouse also states that "it is possible that the confidential hard drive and other DVDs generated by B2B have been utilized to initiate other class action lawsuits." *Id.* This, Cy's Crabhouse argues, violates the protective order's instruction that "Confidential Information shall not be used for *any* purpose other than the defense or prosecution of this action . . . and shall not be discussed or disclosed to any person except as specifically authorized by this Order." Docket no. 81.

CE Design argues that the materials Abraham disclosed are not "confidential"

under the protective order. The protective order states that to be treated as confidential, material must either be clearly marked as confidential, or the producer's desire to treat it as confidential must be disclosed to counsel in writing. *Id.* CE Design argues that because Abraham neither marked the materials confidential nor informed counsel in writing that they were intended to be confidential, the protective order does not apply.

CE Design may be technically correct that Abraham did not satisfy the requirements of the protective order for designating material as confidential. The Court notes, however, that the conduct of CE Design's counsel on this point was not entirely on the up and up. It is undisputed that Kelly represented to Abraham that the materials she turned over would be treated as confidential and that he referred specifically to a protective order. In his December 16, 2008 e-mail to Abraham, Kelly said: "[p]lease find attached the protective order that will be entered that *will* prevent me from disclosing any of the back-up disks or hard drive to any third-party." Docket no. 215, Ex. L (emphasis added). This e-mail clearly seems designed to persuade Abraham to turn over the electronic media (which were beyond the reach of the show cause order) by reassuring her that anything she turned would be treated as confidential. Given those circumstances, it is rather disingenuous for plaintiff's counsel now to argue that it is Abraham's own fault that the materials are not "confidential" as defined by the protective order because she failed to comply with the technical designation process. The Court also notes that CE Design's counsel himself appears to have believed, at least at one point, that the information on the disk Joel produced at his deposition *was* confidential. In an e-mail to counsel for Cy's Crabhouse, Kelly said, "please treat the

DVD produced by Joel Abraham as confidential pursuant to the protective order in this case." Pl.'s Mem. in Opp. to Summ. J. (Docket no. 232), Ex. A.

In response to that e-mail by Kelly, an attorney for Cy's Crabhouse noted that under the protective order, confidentiality designations had to be made at the time of production, and Kelly's request was "months and months too late," and "[t]here is simply no legal basis for asserting that these records cannot be used in other TCPA litigation." *Id.* CE Design argues that based on these statements, Cy's Crabhouse should be estopped from arguing that the DVD is confidential material under the protective order. The threshold problem with this contention is that estoppel, if applicable, runs both ways. The 180-degree shift by Cy's Crabhouse's counsel may taint its current protestations, but it does not excuse the similar about-face by CE Design's counsel.

Even if the Court assumes that the materials are confidential, however, Cy's Crabhouse has failed to show that it was been prejudiced by the alleged violation of the protective order. Even if plaintiff's counsel has used the information from the backup disks and hard drive to instigate other TCPA lawsuits, Cy's Crabhouse has made no argument indicating how that fact prejudices its ability to defend itself in this case. The Court will not dismiss the action based on violation of a protective order that resulted in no prejudice to the moving party.

The Court is, however, troubled by the conduct of CE Design's counsel and intends to hold a further hearing to determine how the materials from B2B have been used and the rationale supporting such use. The Court will determine after conducting that hearing whether further sanctions (not including dismissal) are appropriate under the Court's inherent authority to sanction bad faith litigation conduct, 28 U.S.C. § 1927,

or both, in light of counsel's apparent actions contrary to assurances he gave Abraham to obtain the disks and hard drive.

2. *Failure to comply with supplemental discovery and to supplement discovery responses*

Cy's Crabhouse also argues that CE Design failed to comply with supplemental discovery requests and did not meet its ongoing discovery obligations. At the January 22 hearing, counsel for CE Design informed the Court that it had complied fully with the supplemental discovery requests submitted by Cy's Crabhouse, which led the Court to terminate as moot the then-pending motion to compel production. Cy's Crabhouse alleges that counsel for CE Design knowingly misled the court. It argues that at the time of the hearing, CE Design's counsel was aware that it had not disclosed several e-mail communications with Abraham, including requests for production of backup disks and the crashed hard drive. Cy's Crabhouse also alleges that counsel for CE Design continued to have contact with Abraham via e-mail after the January hearing and did not disclose to Cy's Crabhouse those communications or the backup disks and hard drive counsel received as a result, in violation of CE Design's ongoing discovery obligations.

CE Designs does not dispute the allegations that it failed to disclose some e-mails between its counsel and Abraham and some documents it received from Abraham. It argues instead that such failures to disclose were inadvertent and that "[n]one of the documents or information are relevant to Plaintiff's claims." Docket no. 232 at 14.

The Court finds that the allegation that CE Designs failed to disclose a few of its

e-mails with Abraham is *de minimis*. The omitted messages are short e-mails that are parts of longer e-mail strings, most of which were disclosed to Cy's Crabhouse. Cy's Crabhouse has not alleged any prejudice that resulted from the non-disclosure. Dismissing the case on this ground would be "an excessively severe sanction." *Newman*, 962 F.2d at 591.

The allegation that CE Design failed to turn over the disks and the hard drive is somewhat more substantial. Cy's Crabhouse contends that plaintiff received these media from Abraham but never disclosed them to Cy's Crabhouse. Cy's Crabhouse did, however, have access to the disks and drive through its expert, who had reviewed them for another TCPA case involving B2B. Docket no. 237, Ex. F ¶ 11.

Here again, however, the Court finds that Cy's Crabhouse has failed to show prejudice resulting from these failures to comply with discovery. The closest it comes is its argument that it only learned of the hard drive and backup disks from plaintiff's counsel after the close of expert discovery in this case. It says that its expert reviewed the disks and drive and believes that they are "sufficient to rebuild 95% of the operating environment of at least one of B2B's servers as it existed in 2008." *Id.* at 15. Cy's Crabhouse argues that it was unfairly prejudiced because its expert did not have access to this information when he gave his opinions on this case. *Id.*

Cy's Crabhouse does not, however, explain how this lack of information has prejudiced its case, saying only that "there would have to be a complete unwinding of the case – given what documents and media are only now known to defendants as opposed to what was known by plaintiff's counsel and its expert for the last year – to decipher the true impact in this case." *Id.*

The Court is not persuaded. In its own brief, Cy's Crabhouse acknowledges that it now has access to all the information it alleges CE Design withheld from it. It has not hinted that its expert's views are in any way altered by the disclosure of this information prior to the close of expert discovery. Even if it did suffer prejudice by this failure to disclose, dismissal of the entire case seems too extreme a sanction for a failure that can be remedied in a less severe way. The more appropriate relief, which the Court hereby orders, is to give permission to submit a supplemental report from its expert based on this newly-obtained information, by no later than July 11, 2010. If the Court determines that the additional information at issue has required material changes in the expert's opinions, the Court will assess the expert's reasonable expenses against CE Design and/or its counsel under Rule 37 or 28 U.S.C. § 1927.

*3. Conclusion*

For the foregoing reasons, the Court denies the motion of Cy's Crabhouse to dismiss the case for failure to comply with discovery orders under Rule 37(b)(2)(A).

**B. Motion for protective order of the information submitted by Abraham**

The Court turns next to Abraham's letter to the Court. In the letter, Abraham requests that the Court prevent plaintiff's counsel from using the information she submitted in any TCPA case other than the four cases Kelly identified when he requested the materials.

It appears that some such lawsuits have already been filed by plaintiff's counsel using this information. This Court lacks jurisdiction to interfere with any cases currently pending in other jurisdictions that may have used this information and therefore is unable to provide Abraham with that portion of the relief she seeks.

The prospective use of these materials presents a different question. The protective order in this case provides that parties or "other persons" may seek a protective order "as to any particular document or information, including restrictions differing from those specified herein." Docket no. 81 ¶ 12.

The Court will treat Abraham's letter a request for protective order regarding those documents and electronic media that she produced in this case containing fax numbers and other information about B2B's customers. Although the protective order states that requests for confidentiality should be made at the time of disclosure, the Court finds there is good reason for the delay – namely, that Abraham had been given reason to believe, based on Kelly's representations, that the materials were already designated confidential or would be so designated.

The Court therefore finds there is valid ground for granting the late request for confidentiality now that Abraham has realized this was not the case. The Court rules that going forward, the documents, disks, and media containing B2B customer information and fax lists shall be treated as "confidential" as defined by the protective order. Both parties, therefore, are forbidden from using the information "for *any* purpose other than the defense or prosecution of this action." *Id*. ¶ 6.[6]

**C. The check made out to Abraham's counsel**

In its brief, Cy's Crabhouse also discusses a check for five thousand dollars that

[6] The Court notes that Joel was served with a subpoena identical to the one in this case in the *Finish Thompson* case, including the request to produce backup disks and the hard drive. Nothing in this ruling should be interpreted to limit any other valid subpoena or discovery request for these materials in *Finish Thompson* or any other case. Any request for relief in that case should be presented to Judge Kendall.

Brian Wanca, an attorney for the plaintiff, made out to Eric Rubin, an attorney for the Abrahams. The memo line of the check contained the words “document retrieval.” Rubin (who Abraham says does not represent her at present, but who did briefly represent her and accompanied Joel to his deposition) marked the check “void” and returned it to Wanca.

Cy’s Crabhouse suggests that the check demonstrates that plaintiff’s counsel had a financial relationship with Abraham, which it argues makes CE Design’s discovery violations all the more egregious. Cy’s Crabhouse also notes that in its ruling on class certification, the Court credited the testimony of Abraham and Joel about how they maintained their business records in part because “as a nonparty without a financial stake in the case, B2B’s regularly kept business records do not raise any special reliability concerns.” Docket no. 156 at 7. The check, Cy’s Crabhouse claims, undermines that finding.

The Court is not persuaded that this is grounds for dismissal under Rule 37(b)(2)(A) or for reconsideration of class certification (a request Cy’s Crabhouse does not make in any event). In its ruling on class certification, the Court did state its belief that Abraham does not have a financial interest in the case. But the tender of the check does not undermine that finding; Abraham refused the check via her counsel. Moreover, in its brief, Cy’s Crabhouse tells only half the story. Though it hints that the check might support an inference that CE Design was improperly buying Abraham’s loyalty, it fails to mention that in two of Abraham’s letters to Kelly, she solicited payment to offset the costs she had incurred in attempting to comply with discovery obligations (although these requests totaled $2,000, not $5,000.) Docket no. 215, Ex. I; Docket no.

237, Ex. A.

Although the Court is not prepared to dismiss the case on this ground, it is troubled by the attempted payment. Specifically, the Court has serious concern about the propriety of an attempted payment to a non-party in exchange for compliance with discovery requests, particularly in light of the fact that this was not disclosed to the other side.

CE Design's brief on the present dispute is rather deafeningly silent regarding the attempted payment, its purpose, and the surrounding circumstances. The Court therefore directs counsel for CE Design to submit to the Court a sworn explanation by each counsel of record describing any past or current financial arrangement, and any financial arrangement that was proposed or suggested but never executed between plaintiff or plaintiff's counsel and Caroline Abraham, Joel Abraham, B2B, or their counsel. This submission is to be made by no later than June 25, 2009.

**Conclusion**

For the foregoing reasons, the Court denies defendant's motion to dismiss this case pursuant to Federal Rule of Civil Procedure 37 [# 215 & 227]. The Court grants Abraham's third party motion for a protective order applying to the fax records and customer lists (both paper and electronic) given to plaintiff's counsel in regard to this case. The Court directs plaintiff's counsel to submit, no later than June 25, 2009, sworn explanation regarding actual, proposed or suggested financial arrangements between plaintiff or its counsel and Caroline Abraham, Joel Abraham, B2B, or their counsel, as more fully described in the body of this decision. This case is set for a status hearing

on June 30, 2009, at 8:45 a.m.

MATTHEW F. KENNELLY
United States District Judge

Date: June 11, 2010