# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CE DESIGN LTD., an Illinois corporation, individually and as the representative of a class of similarly-situated persons, | )<br>)<br>) |
| Plaintiff, | ) Case No. 07 C 5456 |
| v. | ) Judge Matthew F. Kennelly |
| CY's CRAB HOUSE NORTH, INC. and CY's CRABHOUSE & SEAFOOD GRILL, INC. | )<br>) |
| Defendants. | ) |

**PLAINTIFF'S MOTION TO POSTPONE APPROVAL OF CLASS SETTLEMENT**

Plaintiff CE Design, Ltd. moves this Court to postpone final settlement approval pending confirmation that the affidavits of Cy Sadeghi (Defendants' principal) and Bruce L Goldberg (a corporate attorney and registered agent of Cy's North) submitted in support of Plaintiff's motion for preliminary approval are truthful and accurate. In support, Plaintiff states:

**Introduction**

1. The Court preliminarily approved the parties' Settlement Agreement (the "Settlement" or the "Agreement") on September 22, 2010. (Doc. 373).

2. Thereafter, class notice issued in accordance with the Court's September 22 Order. (Doc. 373 at ¶ 7). In response, only one class member requested exclusion and no class member objected. CAFA notices sent to government officials also yielded no objections. (Doc. 371).

3. The final Fairness Hearing on the Settlement is set for January 12,

2011, at 9:30 a.m. (Doc. 373).  Given that there were no objections, it is not anticipated that any objectors will appear at the hearing.

4. As an essential and material part of the Settlement, and attached to and incorporated in Plaintiff's Motion for Preliminary Approval of the Settlement (Doc. 367), Defendants provided affidavits attesting that neither their insurer nor insurance defense counsel ever disclosed, or advised them about, any conflicts of interest between the insurer's interests and Defendants' interests, and that Defendants had never waived any such conflicts (hereinafter, "the Guarantee").[1]  Affidavit of Cy Sadeghi (Exhibit A) and Affidavit of Bruce L. Goldberg (Exhibit B).

5. The Guarantee from Defendants was essential to the Settlement because the terms of the Settlement provide that it may only be satisfied from one source of funds – *i.e.*, Defendants' insurance.  If the Guarantee is accurate and truthful, then the insurer will be estopped from raising coverage defenses.  This "estoppel doctrine" can be invoked "if the insured establishes that a conflict of interest existed and that the insurer defended him without first properly reserving its rights by making specific reference to the conflict in its reservation of rights."  *Utica Mutual Ins. Co. v. The David Agency Ins. Inc.*, 327 F.Supp.2d 922, 928 (N.D. Ill. 2004) (Kennelly, J.), *citing Doe v. Ill. State Med. Inter-Ins. Exch.,* 234 Ill.App.3d 129, 174 (1st Dist. 1992).  "A proper reservation

---

[1]  The Court will recall that, during trial, Defendants had attempted to enforce the Settlement without those affidavits, but the evidence demonstrated that Plaintiff had insisted the affidavits be provided before any settlement could be reached, and the Court had declined to enforce a settlement until the affidavits were provided.

of rights is one that allows the insured to choose intelligently between accepting the insurer's defense counsel and retaining his own counsel." *Id.* at 929-30. "Bare notice of a reservation of rights is insufficient unless it makes specific reference to the policy defense which may ultimately be asserted and to the potential conflict of interest." *Id.* at 930 *quoting Royal Ins. Co. v. Process Design Assoc., Inc.*, 221 Ill.App.3d 966, 973 (1st Dist. 1991).

6. If the Guarantee is not true, however, and Defendants were advised of a conflict and waived it, then the insurance funds may not be available to satisfy the Settlement. In other words, the premise upon which Plaintiff's agreed to the Settlement, and upon which this Court preliminarily approved the Settlement, will not be true.

7. A declaratory judgment action, styled *Truck Insurance Exchange v. Cy's Crabhouse North, Inc.*, et al., 10 CH 6130 (Cook County, IL) (hereinafter, "the DJ Action"), is currently pending regarding these issues of coverage, conflict, and waiver.

8. Since the September 22 preliminary approval hearing, defense counsel's conduct in the DJ Action has caused Plaintiff's counsel to question whether the affidavits of Cy Sadeghi and Bruce L. Goldberg are true.

9. Plaintiff's counsel has diligently attempted to ascertain the accuracy of the affidavits in advance of the January 12, 2011 Fairness Hearing, but defense counsel has obstructed these efforts, invoking attorney-client privilege even though Cy Sadeghi's affidavit constitutes voluntary testimony (*i.e.*, disclosure and waiver) about the subject matter at issue and Defendants

3

have alleged in the DJ Action that the insurer and defense counsel failed to disclose conflicts and provided a conflicted defense.

## Relevant Events in the DJ Action

10. On October 12, 2010, Plaintiff, a defendant in the DJ Action, served a subpoena for documents on Defendants' counsel, seeking any and all documents regarding disclosure of any conflict of interest between Defendants, their insurance-provided defense counsel, and the insurer, including any waivers of any such conflict(s). (Exhibit C at ¶¶ 3, 4, 5, 6, 7 and 8). According to the affidavits submitted with the settlement in this Court, there should be no such documents. Plaintiff expected defense counsel to answer "none."

11. Defense counsel failed to respond to the subpoena. On Plaintiff's motion for rule to show cause, the court in the DJ Action ordered them to produce responsive documents by December 14, 2010.

12. On the required date, defense counsel instead sent objections to subpoena paragraphs 2-7, refusing to produce responsive documents and claiming that Plaintiff first would have to obtain a written waiver of the attorney-client privilege from Defendants. (Exhibit D).

13. On December 16, 2010, Plaintiff's counsel wrote to defense counsel Eric Samore objecting to the privilege claims and stating:

> If you contend that Cy Sadeghi's affidavit is false in any way notify us immediately so we can inform Judge Kennelly. Obviously, you have a duty to correct any factual misstatements or omissions made by your clients in that case. In any event, there is no attorney client privilege or work product protection available. [Exhibit E].

14. The very next day, December 17, 2010, all six attorneys comprising

4

defense counsel, and the firm itself, filed a motion to withdraw as Defendants' counsel in this action. The motion states no reason for the withdrawal request.

15. Also on December 17, defense counsel – while remaining silent with respect to whether Cy Sadeghi's affidavit was accurate and truthful – produced a privilege log in response to Plaintiff's subpoena. (Exhibit F). Several of the documents referenced in the privilege log indicate "ROR/Conflict" as a "Subject." Id. We assume "ROR" means "reservation of rights."

16. On December 23, 2010, Plaintiff's counsel issued subpoenas for depositions of, and document production by, a representative of defense counsel's firm, and of defense counsel Eric Samore himself. Required to give reasonable notice, Plaintiff scheduled the depositions for January 7, 2011. On January 4, 2011, just three days ago, defense counsel Eric Samore and his firm filed a motion to quash the subpoenas in the DJ Action, again claiming attorney-client privilege. They have scheduled their motion to quash for presentment on January 11, 2011.

17. As a result of this more recent conduct, Plaintiff's counsel's concerns as to the accuracy and truthfulness of Defendant's settlement affidavits are understandably heightened.

**Argument**

18. Defense counsel have had ample opportunity to review Defendants' affidavits, and defense counsel have not disclosed the existence of any false statements or misleading omissions.

19. The Illinois Rules of Professional Conduct require that attorneys

5

must notify the court if their client participates in anything illegal or fraudulent, and the attorneys must attempt to rectify and disclose the illegal or fraudulent conduct. *See Ill. Rules of Prof. Conduct* 3.3(a); *ISBA Advisory Opinion on Professional Conduct,* Opinion No. 98-07, March 1999 (lawyer should first attempt to have the client rectify the fraud, but where that does not happen, the lawyer should be required to make limited, sufficient disclosures to the extent necessary to rectify it.). Here, the affidavits are a material component of the settlement and any false statements therein would work a fraud upon Plaintiff and the Court (in determining whether the settlement collectible only against insurance assets is fair, reasonable, and in the best interests of the class).

20. In "You can't hide your lyin' ayes," *National Law Journal*, May 17, 2010 (Exhibit G), Jerold S. Solovy and Robert L. Byman recently explained that New York has joined the majority of states, including Illinois, such that:

> Now "a lawyer is required to remedy the false testimony." Remedies include reasoning with the client to himself correct the false statement, but if all else fails, the remedy is to disclose the false testimony. Withdrawal is not an option. "Withdrawal, without more, does not correct the false statement, and indeed increases the likelihood that the false statement, if unknown to the substituting attorney, will be presented to a tribunal or relied upon by the adverse party." [citation omitted].

21. Here, defense counsel's silence—taken together with its obstructive tactics in the DJ Action, and its sudden and unexplained motion to withdraw in this case—arguably portends of the unacceptable inference that Defendant's settlement affidavits are not entirely accurate and truthful. Simply put, Plaintiff's counsel is concerned that defense counsel appear to be avoiding

6

disclosure that their clients' affidavits are factually incorrect in a material way.

22.     Under these circumstances, and until this uncertainty is fully explored and resolved, Plaintiff cannot support the Settlement Agreement. More to the point, if it turns out that the affidavits are not entirely accurate and truthful, then Plaintiff cannot agree to the Settlement.

23.     Plaintiff's counsel are not trying to bother the Court with something frivolous, but are reasonably concerned about supporting the approval of a no-money class settlement without notifying the Court of this issue and seeking a remedy.

WHEREFORE, Plaintiff moves this Court to enter an order postponing the approval of the class settlement until Defendants' counsel confirm whether the affidavits of Cy Sadeghi and Bruce L Goldberg submitted in support of Plaintiff's motion for preliminary approval are, to their knowledge and based on all information available to them, truthful and accurate in all respects.

January 7, 2011

Respectfully submitted,

By: /s/ Phillip A. Bock
      One of Plaintiff's attorneys

| | |
|---|---|
| Brian J. Wanca | Phillip A. Bock |
| Ryan M. Kelly | Daniel J. Cohen |
| ANDERSON + WANCA | Tod A. Lewis |
| 3701 Algonquin Road, Suite 760 | James M. Smith |
| Rolling Meadows, IL 60008 | BOCK & HATCH, LLC |
| Telephone: 847/368-1500 | 134 N. La Salle Street, Suite 1000 |
| | Chicago, IL 60602 |
| | Telephone: 312/658-5500 |

7