**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CE DESIGN LTD., an Illinois corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Case No. 07 C 5456 |
| | ) | |
| v. | ) | Judge Kennelly |
| | ) | |
| CY'S CRAB HOUSE NORTH, INC., and CY'S CRABHOUSE & SEAFOOD GRILL, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S SUPPLEMENTAL SUBMISSION IN SUPPORT OF
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff, CE Design Ltd., individually and on behalf of the class, submits this

supplemental brief in support of final approval of the class action settlement.

## I. **Introduction**

Since Defendants' counsel withdrew, implying that the affidavits were false, Plaintiff has

sought to confirm the truth of the affidavits Defendants gave as a precondition to settlement

(hereinafter, "the Cy's Affidavits). The affidavits are about whether Defendants' insurer, Truck

Insurance Exchange ("Truck"), and the lawyers it appointed to represent Defendants, disclosed

the conflicts between them and whether Defendants waived those conflicts. The Court postponed

final approval, noting that it had relied upon the Cy's Affidavits in granting preliminary

approval, and that if they were false the settlement could be illusory and would be rejected.

There are three primary issues. First, did Truck's reservation of rights ("ROR") create an

actual or potential conflict of interest in its provision of a defense to Defendants? Second, did

Truck meaningfully disclose the conflicts to Defendants? Third, did Defendants knowingly

1

waive the conflicts? These three issues are subparts of a single, overarching question – Did Truck provide a conflicted defense to Defendants in this case? If the answer is "yes," then the settlement is not illusory. *See Utica Mut. Ins. Co. v. David Agency Ins., Inc.*, 327 F. Supp. 2d 922, 931 (N.D. Ill. 2004) (recognizing that if the insurer fails to meaningfully disclose a conflict of interest to the insureds and fails to obtain their knowing waiver, then the insurer is providing a conflicted defense that will void all of its coverage defenses in a declaratory judgment action about coverage). If the answer is "no," then Truck may attempt to argue that Defendants entered into an unauthorized settlement.

Plaintiff deposed Truck's corporate designee Mark Shoquist ("Shoquist") in this action. Plaintiff also deposed attorney Eric Samore ("Samore") in the declaratory judgment action that Truck filed against Defendants and Plaintiff (hereinafter, "the DJ Action"). These depositions show that the Cy's Affidavits are true—*i.e.,* that neither Truck nor SmithAmundsen ("SA") disclosed conflicts to Defendants, and that Defendants never waived such conflicts—and for that reason Plaintiff supports final approval of the settlement.

## II. <u>The Purpose of this Submission</u>

The Court owes a duty to the class when scrutinizing a proposed settlement. *Stewart v. General Motors Corp.*, 756 F.2d 1285, 1293 (7th Cir. 1985). To that end, the Court should satisfy itself that the Cy's Affidavits are true and that the parties' settlement is not illusory. This brief summarizes the testimony of Samore and Shoquist, and places it in the relevant legal context, to assist the Court's consideration of whether to grant final approval to the settlement.[1]

---

[1] Plaintiff's summary of the relevant testimony of Samore and Shoquist is not intended to substitute for the Court's own consideration of the full testimony of such witnesses, and the witnesses' depositions are attached as <u>Exhibit 3</u> and <u>Exhibit 4</u>.

### III. The Conflicts of Interest

#### A.    Conflict under *Maryland v. Peppers*

Truck first communicated an ROR to defendants Cy Sadeghi ("Cy") and Cy's Crabhouse North, Inc. ("North") with a letter dated June 23, 2008. Exhibit 1 attached. Truck stated that it was already providing a defense subject to an ROR based on, among other things, policy exclusions for intentional conduct. That ROR created a conflict of interest between Truck on the one hand, and Cy and North on the other hand, because the intentionality of their conduct was at issue and would be resolved by the trier-of-fact in the class action. Although Truck and Defendants shared an interest in obtaining a defense verdict, their interests diverged if a plaintiff's verdict were returned because Defendants would be best served by a finding that their conduct was unintentional, supporting coverage, but Truck would be best served by a finding that Defendants knew the advertising faxes were sent to persons who had not consented to receive them, avoiding property damage coverage. The Illinois Supreme Court has recognized this situation as creating a conflict of interest between insurer and insured. *See Maryland Cas. Co. v. Peppers*, 355 N.E.2d 24, 30-31 (Ill. 1976) ("Because of this conflict of interests, serious ethical questions prohibit an attorney from representing both the interests of [the insurer] and of [the insured] * * * [and the insured] has the right to be defended in the [underlying action] by an attorney of his own choice who shall have the right to control the conduct of the case"). *See also Nandorf, Inc. v. CNA Ins. Cos.*, 479 N.E.2d 988, 991 (Ill.App. – 1st Dist. 1985) ("When conflicts arise … [t]he insured is entitled to assume control of his own defense in the underlying action").

#### B.    Additional and magnified conflict because the first ROR was untimely

The conflict created by Truck's June 23, 2008 ROR was magnified because Truck controlled the defense of this action for many months before sending that letter. The action was filed against Cy in July 2007, and SA entered its appearance on behalf of Cy on September 27,

2007. The First Amended Complaint adding North as a party-defendant was filed in early May 2008, and SA appeared for North on May 30, 2008. Truck did not communicate any ROR to either Cy or North until June 23, 2008. In other words, Truck provided a defense to Cy without an ROR for at least 9 months, and provided a defense to North without an ROR for a month.

Worse still, by the time Truck issued its June 23, 2008 ROR, all of the relevant fact witnesses had been deposed, and their testimony on issues affecting the intentionality exclusion had been given. Thus, Truck waited until all relevant witnesses, including Defendants, had been "locked" into their testimony before alerting them that Truck was reserving the right to deny coverage based on an exclusion affected by that same locked testimony.

Under Illinois law, an untimely ROR may be ineffective, *Ins. Corp. of Ireland Ltd. v. Board of Trustees of Southern Illinois University*, 937 F.2d 331 (7th Cir. 1991), especially when the tardiness prejudices the insured. *Essex Ins. Co. v. Stage 2, Inc.*, 14 F.3d 1178 (7th Cir. 1994). Prejudice can be proved if the insured "establishes that a conflict of interest existed and that the insurer defended him without first properly reserving its rights by making specific reference to the conflict in its reservation of rights." *Utica*, 327 F. Supp. 2d at 928. An insurer's failure to promptly and timely communicate an ROR to its insured based on an intentional acts exclusion itself creates a conflict of interest. *Dietz-Britton v. Smythe, Cramer Co.,* 743 N.E.2d 960, 968-69 (Ohio App. 2000). Here, Truck issued the first ROR to Cy and North on June 23, 2008, knowing that it was untimely and ineffective, but failed to disclose the untimeliness and ineffectiveness of that ROR. That untimeliness itself created a conflict of interest between Truck and its insureds.

**C.**     **Conflict arising from Truck's untimely ROR regarding Seafood**

A further conflict arose by virtue of Truck's untimely ROR regarding Seafood. The Second Amended Complaint adding Seafood was filed on January 5, 2009, and, with

authorization from Truck, SA undertook representation of Seafood on February 17, 2009. More

than a year later, on February 26, 2010, Truck sent a letter to Cy and North (not Seafood)

asserting that its provision of a defense to Seafood was subject to an ROR. Exhibit 2. Even then,

that second ROR did not disclose conflicts. Thus, Truck provided a defense to Seafood without

any ROR for an entire year before its February 26, 2010 letter. An untimely ROR is invalid. *Ins.*

*Corp. of Ireland*, 937 F.2d 331; *Essex*, 14 F.3d 1178. Truck's assertion of this untimely and

invalid ROR, together with Truck's failure to disclose to Seafood that the ROR was untimely and

invalid, created a conflict between Truck and Seafood. *Dietz-Britton,* 743 N.E.2d at 968-69.

**D.**     **Additional and magnified conflict arising from Truck's assertion of a right to Defendants' reimbursement of attorneys fees, litigation expenses, and settlement monies paid by Truck.**

Truck's second ROR (dated February 26, 2010) magnified the conflicts, because it

purported to assert Truck's right to reimbursement of attorneys fees, litigation expenses, and any

settlement monies that might be paid by Truck. Exhibit 2. This claimed right of reimbursement

exacerbated existing conflicts because, in effect, Truck had been controlling the already-

conflicted defense of its insureds, yet now took the position that if it ultimately prevailed on its

conflict-creating RORs regarding coverage, the insureds would be required to reimburse the

costs of the defense that Truck had selected and controlled. Stated differently, Truck had an

additional financial incentive to induce findings taking the case outside of coverage.

Truck's February 26, 2010 assertion of a reimbursement right was untimely, because

Truck had been providing a conflicted defense for more than two years. If Truck wanted to

reserve a right of reimbursement, it needed to notify Defendants of that reservation in a timely

manner, so that Defendants could take account of that consideration in deciding whether to

waive conflicts, or alternatively to hire independent counsel. *Dietz-Britton,* 743 N.E.2d at 968-69

(holding *untimeliness* of conflict-creating reservation of rights *itself* creates conflict of interest).

Finally, Truck's February 26, 2010 ROR did not disclose or explain to the insureds the conflict arising from this claimed right of reimbursement, or advise the insureds that, by reason of the conflict they were entitled to hire independent counsel, paid by Truck, to represent them.

## E.     <u>Additional conflicts</u>

There are at least two additional conflicts. First, a conflict arose upon the filing of the Second Amended Complaint adding Seafood, and SA's subsequent representation of both North and Seafood, because (i) the potential damages at trial against one or both entities exceeded $3.6 million, (ii) Truck claimed that the separate policy limits for each entity were only $2 million, (iii) Truck, SA and Seafood claimed that Seafood could not be liable because it was not advertised in the subject faxes, and (iv) if Truck, SA and Seafood were successful in defeating Plaintiff's claim against Seafood on that basis, then North alone could be held liable for damages far in excess of its alleged policy limits. Stated differently, although both North and Seafood shared an interest in defeating Plaintiff's claims against all Defendants, if a plaintiff's verdict were returned against North, then North would be best served by also having a plaintiff's verdict returned against Seafood, increasing the likelihood of sufficient policy limits to cover such verdicts, and preventing against a situation where North might be obligated to pay that portion of a damage award in excess of its policy limits. In this situation, a conflict arose under Local Rule 83.51.7 (b) (2) and (c), which provides that "[w]hen representation of multiple clients in a single matter is undertaken," the attorney shall disclose and explain "the implications of the common representation and the advantages and risks involved," and the attorney must obtain the client's consent to such joint representation given such risks. LR83.51.7 (b) (2) and (c).

Second, a conflict arose by virtue of SA's extensive history of providing legal services to

insureds at Truck's request. Given the divergence of interests between Truck and Defendants, SA's business history with and long-term financial dependence on Truck created a conflict of interest – *i.e.*, a divided loyalty – for SA in purporting to represent both the insurer's and the insureds' interests in this case. *Utica*, 327 F. Supp. 2d at 931 (N.D. Ill. 2004).

## IV. <u>The Need for Disclosure and Waiver of Conflicts of Interest</u>

In disclosing conflicts, it is not sufficient for an insurer, or the attorneys it hired, to merely notify the insured of a reservation of right to deny coverage, or to merely identify the specific basis for that reservation of right. To the contrary, the disclosure must be meaningful – *i.e.,* the insurer and the counsel that it has hired for the insured must specifically and expressly disclose to the insured that the nature of the asserted reservation of rights is such that it creates a conflict of interest between the insurer and the insured, and must explain the conflict. *Utica,* 327 F. Supp. 2d at 930 ("Bare notice of a reservation of rights is insufficient unless it makes specific reference to the policy defense which may ultimately be asserted *and to the potential conflict of interest*") (internal quotations and citations omitted) (emphasis added). *See also Huber v. Tayler*, 469 F.3d 67, 82 (3rd Cir. 2006) ("The fiduciary duty that an attorney owes clients is not a matter to be taken lightly … [and includes] the ethical obligations of giving clients full and meaningful disclosure of conflicts of interest so that the client may decide if the representation is in his or her best interest[.]" * * * "Disclosures to clients must be meaningful, by which we mean something beyond form disclosures, as clients must understand a conflict to give their consent to an intelligible waiver. Indeed, we are embarrassed to have to explain a matter so elementary to the legal profession that it speaks for itself"); *Interstate Indemnity Co. v. Utica Mutual Ins. Co.*, 867 F. Supp. 1355, 1359 (S.D. Ill. 1994) ("Under Illinois law, an insurer clearly owes a fiduciary duty to its insured … to act in good faith for the best interests of the insured").

Faced with the aforementioned conflicts of interest, SA could not represent Defendants and Truck could not control the defense it provided to Defendants unless the conflicts were meaningfully disclosed to Defendants, and then knowledgeably waived by each of them.

## V. The Deposition Testimony of Samore and Shoquist

### A. Samore's deposition testimony

Samore did not believe it was his role to assess whether there was a conflict between Truck and Defendants that would trigger a right in Defendants to select independent counsel. *See* Exhibit 3, pp. 9-10, attached. That determination is made by the insurance carrier, and Samore follows what the insurer says; he doesn't question it. *Id.* at 10-11. Nevertheless, Samore does not believe there was such a conflict, *id.* at 56-57, because although the original Complaint contained allegations of intentional conduct, *id.* at 12, the First and Second Amended Complaints did not contain such allegations and did not expressly seek treble damages. *Id.* at 9-10. Further, at the time the First Amended Complaint was filed, all of the "key depositions" had been taken, and "people had been locked into their testimony," so according to Samore there was nothing SA could have done to affect coverage one way or the other. *Id.* at 10, 23-24.

Even though Truck's June 23, 2008 ROR to Cy and North specifically stated that Plaintiff was seeking treble damages that would be excluded by the intentional acts exclusion in the subject insurance policies, Samore did not agree with that statement. *Id.* at 92-93. Nevertheless, Samore did not advise Defendants of his disagreement with that statement; "to the contrary … I stayed out of the issue entirely." *Id.* at 93-95. In Samore's opinion, Defendants did not have a right to select independent counsel at any time prior to trial. *Id.*

Before trial, Samore considered whether Plaintiff's Rule 26 Disclosures—which referenced treble damages—created a conflict as to North and Seafood. *Id.* at 15. He concluded

8

the disclosures did not create a conflict because, in his view, they were directed only to Cy, who had been dismissed as a Defendant, and would not be deemed "active" as to North and Seafood. *Id.* at 15-16. Samore acknowledged that the Court ultimately indicated it would give a jury instruction that could permit treble damages, but he did not believe a jury finding of willful conduct was a reasonable possibility. *Id.* at 16-19. Rather, he argued that such a jury instruction "was doing the Plaintiff a favor on coverage," and he "did not see that as a risk to the Defendants at all." *Id.* at 16-17. At the same time, Samore claimed a lack of experience with coverage issues, and that he did not know whether a finding that Defendants had acted willfully could adversely affect Defendants in the pending DJ Action, but he conceded, "It might have." *Id.* at 19-20.

Neither Samore nor SA communicated any ROR information to Cy or North before Truck sent the first ROR on June 23, 2008, *id.* at 13, and the defense SA provided to those Defendants was not subject to an ROR prior to June 23, 2008. *Id.* at 25-26. After the issuance of that first ROR, Samore did not advise Defendants that the basis for Truck's ROR created a conflict. *Id.* at 35-36. He thought that was "outside the scope" of his role, *id.* at 36, and "beyond the scope of [his] obligation." *Id.* at 37-38.

SA has a conflicts committee, but to Samore's knowledge this case was never submitted to that committee. *Id.* at 50-52. If the committee had been consulted and had concluded that a conflict existed, the disclosure and waiver thereof would have been in writing. *Id.* at 56-57. SA never obtained a written waiver of conflicts from Defendants. *Id.* at 47.

Samore recognized that a plaintiff's verdict against North and a defense verdict for Seafood could leave North subject to a $3.6M verdict, potentially exceeding policy limits. *Id.* at 31. However, he did not perceive any resulting conflict, *id.* at 38-39, 56-57, because Cy controlled both entities and had the ultimate call and authority with respect to permissible

defenses. *Id.* at 32. "The advocacy that I took was controlled ultimately by my client, which owned both Seafood and North, so there was no possibility of me doing something that would affect available coverage … to North without … my client's approval." *Id.* at 34. Nevertheless, Samore believed that he had an obligation to discuss the "differing interests" of North and Seafood with Cy before entering his appearance on behalf of Seafood, and he claims to have done so. *Id.* at 39, 72-73. "I discussed the possibility that if Seafood were dismissed, that would impact the potential insurance available in the case for North. I did talk about that because I thought that was one of the factors that the decision maker should take into consideration in determining whether to permit me to proceed with a motion to dismiss." *Id.* at 40-41. "I did advise them that there was [a] potential for an insurance policy of Seafood that could work to the benefit of North in the event that there was an adverse judgment against both of them." *Id.* at 42. Samore could not state that he ever used the words "conflict of interest" in disclosing to Cy the "differing interests" of North and Seafood. *Id.* at 40-41. Samore perceived no conflict of interest resulting from Truck's February 26, 2010 reservation of a right to seek reimbursement from Defendants. *Id.* at 99. Before entering an appearance on behalf of Seafood on the claims in the Second Amended Complaint, Samore did not advise Cy that he could elect to have independent counsel, paid by Truck, represent Seafood. *Id.* at 43-44.

If the first ROR letter created any conflicts of interest, Samore believes such conflicts were disclosed in the letter itself, and Defendants waived such conflicts by thereafter agreeing to allow SA to continue representing them. *Id.* at 102-03. However, Samore could not testify that Cy ever said, "I waive the conflict of interest." *Id.* at 104-05. Indeed, in describing his communications with Defendants and their managing agents, he described them as not being "familiar" with legal terminology or "the legal system," and as "layperson(s)" with whom he had

to "lower the language down," and use "the best lay terms that [he] could." *Id.* at 110-12.

Samore perceived his firm's longstanding business relationship with Truck as a potential conflict of interest once Truck had issued the June 23, 2008 ROR giving Defendants an option to select alternative counsel to represent them, and he believed he had an obligation to disclose that relationship to Defendants. *Id.* at 20. Samore claims that he did so. *Id.* at 55, 75-77, 111.

**B.    Shoquist's testimony**

**1.    Identification of the relevant communications**

Before preliminary approval of the settlement on September 15, 2010, Truck sent only two letters to Defendants in any manner relating to issues of coverage, ROR, or conflicts disclosure and waiver. Exhibit 4, pp. 37-38, attached. The first ROR (dated June 23, 2008) was addressed to Cy and North. *Id.* at 37-38, 63; Exhibit 1. The second ROR (dated February 26, 2010) was addressed to Cy and North, not Seafood. Exhibit 4, pp. 37-38; Exhibit 2.

The June 23, 2008 ROR stated that Truck had previously communicated to Cy that Truck was representing him on the claims in the original Complaint under an ROR, and purported to extend that ROR to the defense that Truck was providing to North on the claims in the First Amended Complaint. Exhibit 1. That statement was false, deriving from Truck's "false assumption" that a November 2007 ROR letter to Cy, drafted by Truck's coverage counsel Dan Worker, had been sent when in fact it had not. Exhibit 4, pp. 44-50, 52-53, 55.

Because the June 23, 2008 letter was the first communication by Truck of any ROR, Truck acknowledges that it was providing a *non*-ROR defense to Cy from September 27, 2007 through June 23, 2008, and it was providing a *non*-ROR defense to North from May 30, 2008 through June 23, 2008. *Id.* at 75. Truck did not discover that a November 2007 ROR had never issued until "well after June 2008, and before February 2010, but closer to February 2010." *Id.* at

57-58. Shoquist believes that at the time Truck issued the February 26, 2010 ROR, it already

knew that the November 2007 ROR letter had not issued, and that the June 23, 2008 letter was

the only ROR communication to any of the Defendants. *Id.* at 59. Truck never told Defendants

about the potential ramification of its failure to issue the November 2007 ROR letter, or the

related ramification of its failure to issue any ROR letter until June 23, 2008. *Id.* at 99.

Although SA began representing Seafood on the Second Amended Complaint as of

February 17, 2009, Truck did not communicate any ROR regarding Seafood until February 26,

2010. *Id.* at 73-74. Shoquist had no explanation for that 12-month delay. *Id.* at 73-74. The

February 26, 2010 letter says, "Truck has been defending [North and Seafood] … under [an

ROR]." Exhibit 2, p. 1. Notwithstanding that the earlier June 23, 2008 letter had been directed

only to Cy and North, and that Seafood had not been joined as a defendant until the filing of the

Second Amended Complaint on January 5, 2009, Shoquist suggested that because the June 23,

2008 letter went to Cy, who owned both North and Seafood, Seafood was therefore on notice

that any defense later provided by Truck would also be subject to the same ROR. Exhibit 4, pp.

102-03. And yet, at two other points in the deposition, Shoquist admitted that from the time SA

began representing Seafood on the Second Amended Complaint through to the issuance of the

February 26, 2010 letter – an entire year – SA was defending Seafood without an ROR. *Id.* at 74-

76. The February 26, 2010 letter also indicated that Truck was reserving a purported right to

require Defendants to reimburse Truck for all attorneys fees and litigation costs paid by Truck,

and any monies that Truck might pay in settlement of the class claims. Exhibit 2.

In addition to the June 23, 2008 and February 26, 2010 letters, prior to September 15,

2010 Truck engaged in a single oral communication with attorney Bruce Goldberg, who was the

registered agent for North but not for Seafood, regarding issues of coverage, ROR, or conflicts

disclosure and waiver. Exhibit 4, pp. 40-43. This communication occurred by telephone on February 26, 2010, and the participants were Shoquist, Goldberg, and Truck's outside counsel Dean Herman. *Id.* at 40-41. The purpose was to "explain Truck's right of reimbursement for any uncovered claims that [Truck] pay[s] out," and "to set the backdrop, the judge ordered us to exchange settlement offers, and so we wanted to approach the insured about a demand that was made, and it was in that context that we explained that a demand was made that we were seeking or articulating our right of reimbursement for non-covered claims." *Id.* at 41-42. Shoquist added, "From the best of my recollection, we talked generally about the fact that Truck was providing a reservation of rights to Cy Sadeghi, and that's including the right of reimbursement. So that's the extent of what I can recall." *Id.* at 60-61. Truck knows of no document in which the content of this conversation is set forth in greater detail or more verbatim than Shoquist's testimony. *Id.* at 64. However, as of Shoquist's deposition, Truck had not made any attempt to confirm whether Herman had a memo detailing the relevant contents of the conversation. *Id.* at 64.

### 2. Truck's positions about whether its RORs created any conflicts of interest, whether Truck adequately disclosed any such conflicts to Defendants, and whether Defendants waived any such conflicts

Truck contends that it communicated to Defendants that its RORs created conflicts of interest, *id.* at 86, but Shoquist was unable to identify any particular conflict of interest that arose by virtue of the June 23, 2008 ROR letter, claiming that such a question should be directed to Truck's coverage counsel. *Id.* at 89-94. Nevertheless, it is Truck's position that the letter not only identified the specific basis for the asserted ROR, but also disclosed to Defendants the conflicts arising by virtue of the ROR. *Id.* at 87. The first ROR letter is the only communication to Defendants on which Truck is relying as a disclosure by Truck of conflicts. *Id.* at 87.

The only basis known to Truck for its contention that Defendants waived such conflicts is

the fact that the June 23, 2008 ROR gave Cy and North the option of selecting counsel of their own choosing after retaining SA "to protect your interests," and they elected not to do so. *Id.* at 114-15. Shoquist added, however, that Truck's coverage counsel may have other reasons, but Truck itself is not aware of any other reasons. *Id.* at 115. Truck acknowledges that if the June 23, 2008 ROR letter does not constitute a sufficient disclosure to Defendants of conflicts and thereby lead to a finding of implied waiver by Defendants, there is no other communication that Truck is relying on as being sufficient for such purposes. *Id.* at 88-89.

On the separate issue of whether the joinder of Seafood in the Second Amended Complaint created a conflict between North and Seafood, Shoquist acknowledged that to the extent a unique defense was available only to Seafood, and Seafood's success on that defense could subject North to a damage award exceeding its policy limits, North and Seafood had divergent interests. *Id.* at 106-09. Nevertheless, he insisted that Truck had no reason to perceive a conflict between North and Seafood on that basis. *Id.* at 109. "That's really a defense counsel's job to understand what conflicts he has between two clients and then to inform me." *Id.* at 108. SA never informed Truck that such a conflict existed. *Id.* at 108.

On the separate issue of whether Truck's February 26, 2010 assertion of a right to reimbursement from Defendants created a conflict, Shoquist testified that Truck never perceived any such conflict. *Id.* at 109-10.

### 3. Truck's knowledge of any disclosure of conflicts of interest by SA.

SA never consulted with Truck on any coverage or conflict of interest issues. *Id.* at 32, 68. Notwithstanding SA billing records referencing "ROR" before June 23, 2008, Truck is not aware of any communications with SA in any manner pertaining to an ROR at any time before June 23, 2008. *Id.* at 66-67, 71-73, 76-78.

Truck believes SA may have disclosed conflicts to Defendants and obtained Defendant's waiver of such conflicts. *Id.* at 79-83. This belief is based on a conversation Shoquist had with Samore during trial, near the time of settlement, *Id.* at 79-80, in which Samore "simply said that he had made disclosures to the insured." *Id.* at 81. The context leading to Samore's statement was the fact of the upcoming settlement and the content of the Cy's Affidavits, and "Eric simply said that he had made disclosures to the insured." *Id.* at 81. Shoquist understood Samore to be telling him that the to the extent the Cy's Affidavits said conflicts were never disclosed or waived, the affidavits were untrue. *Id.* at 83. But, beyond the simple statement, "I did make disclosures," Samore did not "shed any detail [on] what he meant by that." *Id.* at 83. Other than this one statement by Samore, Truck has no information indicating that SA disclosed conflicts to Defendants or that Defendants waived them. *Id.* at 84. Samore never went into any detail about his supposed disclosure, including which conflicts were disclosed, how, or the way any supposed waiver was accomplished, and Truck does not know such details. *Id.* at 84.

## VI.
### The Cy's Affidavits are true, compelling the conclusion that Truck provided Defendants with a conflicted defense, permitting Defendants to enter into a settlement with Plaintiff.

Samore's and Shoquist's factual testimony confirms that neither Truck nor SA meaningfully disclosed conflicts to Defendants, and Defendants never waived those conflicts.

### A.    Conflict of interest under *Maryland v. Peppers*

Focusing first on the *Peppers* conflict arising from Truck's ROR based on an intentional acts exclusion, Shoquist and Samore claim that any such conflict was disclosed to Defendants, but they rely solely on Truck's June 23, 2008 letter to prove such disclosure. There is no conceivable way this letter may be construed as a disclosure of a conflict, let alone a meaningful disclosure. The letter did not even use the term "conflict of interest," and it did not articulate the

nature of the conflict by explaining that the jury's resolution of the intentionality issue would affect the coverage issue raised by Truck's ROR. Rather, the letter merely identified the contractual basis for the ROR, not its conflict-creating effect.

Notwithstanding Shoquist's opinion that the letter was sufficient to disclose conflicts, he was unable to identify the particular conflicts supposedly disclosed in the letter, or to point to the particular text of the letter supposedly constituting such disclosure, instead suggesting such questions should be directed to Truck's coverage counsel. Thus, Truck cannot explain how the letter served as a meaningful disclosure, yet Truck contends Defendants should have recognized and understood such disclosure. As a matter of law, the June 23, 2008 letter did not meaningfully disclose any conflicts. *See Huber*, 469 F.3d at 82 (holding that a disclosure of conflicts of interest must be "full and meaningful * * * by which we mean something beyond form disclosures, as clients must understand a conflict to give their consent to an intelligible waiver").

Shoquist and Samore emphasize that the June 23, 2008 letter advised Defendants that they could select counsel of their own choosing and that Defendants elected not to do so, and they opine that Defendants thereby impliedly waived the *Peppers* conflict by allowing SA to continue to represent them. However, this argument ignores the fact that the conflict was never disclosed to Defendants, and thus Defendants were not given the information they needed to make a knowledgeable decision about hiring independent counsel.

Local Rule 83.51.7 addresses conflicts of interest. Section (c) provides that "[w]hen representation of multiple clients in a single matter is undertaken, the disclosure shall include explanation of the implications of the common representations and the advantages and risks involved." *See* LR83.51.7(c). It is only after such disclosure has been made that the client may waive the conflict. *See* LR83.51.7(b)(2) ("the client consents *after* disclosure) (emphasis added).

Truck's June 23, 2008 letter did not explain the "implications" of SA's common representation of both Truck's and Defendants' interests in the class action given Truck's ROR, or the "advantages and risks involved" in such common representation. Thus, Defendants cannot be deemed to have waived the conflict and consented to SA's continued representation. *Utica*, 327 F. Supp. 2d at 931 (holding that insurer's reservation of rights communication to insured that merely identified the fact that intentional acts and punitive damages would not be covered "did nothing to inform [the insured] of the conflict of interest related to the defense of the case" and "made no mention at all of the ways in which [the insurer's] interest might affect or impair its defense of [the insured] on that claim," and that the insurer thus had provided a conflicted defense which estopped the insurer from raising coverage defenses). *See also Woolley v. Sweeney*, No. Civ.A.3:01CV1331-BF, 2003 WL 21488411 (N.D. Tex. May 13, 2003) (rejecting argument that client had expressly waived conflict of interest because client was not provided all of the information necessary to enable him to give informed consent before he made such waivers); *Selby v. Revlon Consumer Products Corp.*, 6 F. Supp. 2d 577, 582 (N.D. Tex. 1997) (holding that mere "acquiescence of a client without informed consent is tantamount to no consent at all"); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS §122 (2002) ("Informed consent requires that the client or former client have reasonably adequate information about the material risks of such representation to that client or former client"); *In re American Continental Corp./Lincoln Savings and Loan Securities Litigation*, 794 F. Supp. 1424 (D.Ariz. 1992) (construing local rule of professional conduct very similar to this Court's LR83.51.7, and holding that "[a] client's implied consent is insufficient to waive a potential conflict of interest").

**B.      Conflicts of interest resulting from untimely RORs**

The record conclusively demonstrates that Truck provided untimely notice to Cy and

North of its ROR as to the original and First Amended Complaints, and provided untimely notice to Seafood of its ROR as to the Second Amended Complaint. Such untimely RORs created independent conflicts of interest. *Dietz-Britton v. Smythe, Cramer Co.,* 743 N.E.2d 960, 968-69 (Ohio App. 2000) (holding an insurer's failure to promptly and timely communicate an ROR to its insured based on an intentional acts exclusion itself creates a conflict of interest). At no time did Truck or SA advise Defendants that Truck's untimely RORs created such conflicts of interest and, therefore, Truck provided a conflicted defense.

**C.      Conflict of interest from Truck's claimed right of reimbursement from Defendants**

For the reasons set forth in Section III(D), above, Truck's claimed reservation of a right to seek reimbursement from Defendants both magnified existing conflicts, and created an independent conflict. *Dietz-Britton v. Smythe, Cramer Co.,* 743 N.E.2d 960, 968-69 (Ohio App. 2000) (holding *untimeliness* of conflict-creating reservation of rights *itself* creates conflict of interest). The Samore and Shoquist testimony confirms that at no time did Truck or SA recognize this conflict, or disclose it to Defendants, or obtain Defendants' waiver thereof. Thus, again, Truck provided a conflicted defense.

**D.      Additional conflicts of interest**

As previously indicated, two additional conflicts existed: (1) the conflict arising from SA's unified representation of both North and Seafood; and (2) the conflict arising from SA's long history of business dealings with Truck. The Cy's Affidavits attest that conflicts were never disclosed to them and never waived by them, but Samore testified that he made some oral disclosures touching upon these two conflicts issues. He did not do so in writing, and he did not obtain written waivers of such conflicts from Defendants.

## VII. <u>Conclusion</u>

The foregoing confirms that as a matter of law Defendants were provided a conflicted defense in this action. As such, Defendants may enter into the proposed class settlement without voiding coverage under the policies of insurance issued by Truck.

Respectfully submitted,

/s Phillip A. Bock
One of Plaintiff's Attorneys

Brian J. Wanca
Ryan M. Kelly
David M. Oppenheim
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847/368-1500

Phillip A. Bock
Daniel J. Cohen
Tod A. Lewis
James M. Smith
Bock & Hatch, LLC
134 N. La Salle Street, Suite 1000
Chicago, IL 60602-1086
Telephone: 312/658-5500